[No. E054989. Fourth Dist., Div. Two. Mar. 29, 2013.]

THE PEOPLE, Plaintiff and Appellant, v.
LAURA MICHELLE HOLMAN, Defendant and Respondent.

1440

1442

COUNSEL

Paul E. Zellerbach, District Attorney, and Matt Reilly, Deputy District Attorney, for Plaintiff and Appellant.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION

McKINSTER, J.—This is a People's appeal from an order of the trial court dismissing the restitution fines originally imposed on defendant and respondent Laura Michelle Holman. Defendant had several different cases and charges, for which she was on probation through a drug court program. Eventually, defendant successfully completed her court-ordered drug treatment program, and the court terminated probation early. The court dismissed all the pending cases, and suspended or dismissed all the imposed fines, including any restitution fines that had not been fully paid. The People now appeal, contending that the trial court erred in suspending, or dismissing, or otherwise terminating the unpaid restitution fines. We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2008, a felony complaint was filed in case No. RIF147618, charging defendant with sale or transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), passing a counterfeit bill (Pen. Code, § 475, subd. (a)), misdemeanor charges of sale or transportation of marijuana, and possession of a controlled drug without a prescription. The complaint alleged that these charges constituted a violation of defendant's probation. Defendant agreed to plead guilty to a single count, the possession of methamphetamine charge. The court granted probation for 36 months and imposed various fines and fees, including payment of a restitution fine of $200, pursuant to Penal Code section 1202.4, former subdivision (b). The payment of the restitution fine was made a condition of defendant's probation.

In February 2009, the People filed a petition alleging violation of defendant's probation based on a new drug charge. Defendant admitted the probation violation, and was reinstated on probation with the provision that 90 days of custody time would be added to the terms. Later that year (Aug. 2009), defendant again admitted violations of probation, but was reinstated on probation.

In September 2009, the court arraigned defendant in case No. RIF152972, which alleged one felony count of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), and a violation of the probation in case No. RIF147618. The day after her arraignment, defendant agreed to plead guilty to the possession of methamphetamine charge; the proceedings were suspended and defendant was again admitted to 36 months' probation, including a condition that she pay a restitution fine of $200 under Penal Code section 1202.4, former subdivision (b). Defendant's conditions of probation under case No. RIF152972 also included provisions that she complete a drug and alcohol treatment program, and that she be evaluated for eligibility to participate in diversion under Proposition 36.[1] In case No. RIF147618, defendant admitted the probation violation and was reinstated on probation on the same terms and conditions as before, with the addition of an extra 30 days of actual custody.

In January 2010, the People filed a new complaint in case No. RIF10000006, alleging two counts of receiving a stolen vehicle (Pen. Code, § 496d, subd. (a)), as well as a violation of probation in defendant's other cases. In February 2010, defendant agreed to plead guilty to the new theft-related charges. The court imposed the upper term of three years on count 1, and a concurrent term of three years on count 2. Execution of sentence was suspended, and defendant was granted formal probation for 36 months. Added to her terms of probation was the requirement that she complete the ROC (Recovery Opportunity Center) program; this term was added to the terms of defendant's probation in cases Nos. RIF147618 and RIF152972 as well. The agreements that defendant executed to enter the ROC program included an advisement that, "I understand that upon successful completion my attorney can file a 1203.4 to allow me to withdraw my plea and enter a not-guilty plea. If the Court grants my attorney's motion, this will allow for a possible dismissal or reduction in the charges that brought me to this program."

Defendant's probation in case No. RIF10000006, as with defendant's previous cases, included a term that she pay a restitution fine of $200, pursuant to Penal Code section 1202.4, former subdivision (b). In all three probations, the court ordered the payment of all fines and fees suspended, pending defendant's participation in the ROC program.

With the exception of a setback in the early months of the program, defendant progressed well and was promoted to the successive phases of the program in due course. She was consistently cooperative with the ROC staff

---

[1] Approved by the voters on November 7, 2000, Proposition 36, the "Substance Abuse and Crime Prevention Act of 2000," was codified at Penal Code sections 1210, 1210.1, and 3063.1 and division 10.8 (§ 11999.4 et seq.) of the Health and Safety Code.

and peers. She began attending school and working part time. On September 14, 2011, defendant graduated from the ROC program, and the drug court terminated her probation early. The minutes in each case recited that the court ordered "all fines suspended," and granted the defense motion under Penal Code section 1203.4, setting aside defendant's guilty pleas in each case, and entering a plea of not guilty. The court thereupon dismissed the cases.

At the hearing, the court inquired, "is there a motion by the Defense?" Defense counsel responded, "Yes, your Honor. Make the same motion to stay and suspend all fines and fees and dismiss all of her cases pursuant to 1203 on the ROC contract." The prosecutor, however, stated, "Same objection as to the fines and fees." The court implicitly overruled the People's objection and granted the defense motion "to set aside your pleas, dismiss the charges, and terminate probation, and suspend all fines and fees."

The People filed a notice of appeal from the ruling suspending all fines and fees.

## ANALYSIS

### I. Standard of Review

The issue presented is whether the trial court had the authority or discretion to suspend, or dismiss, or otherwise do away with or terminate the restitution fine with respect to each of defendant's cases. The issue turns on the interpretation of the relevant statutory provisions and, thus, presents essentially an issue of law, which we review de novo. "[W]hen the propriety of a restitution order turns on the interpretation of a statute, a question of law is raised, which is subject to de novo review on appeal." (*People v. Williams* (2010) 184 Cal.App.4th 142, 146 [108 Cal.Rptr.3d 772].) "Questions of statutory interpretation are, of course, pure matters of law upon which we may exercise our independent judgment." (*Jones v. Pierce* (1988) 199 Cal.App.3d 736, 741 [245 Cal.Rptr. 149].) Accordingly, the standard of review is de novo.

### II. The State's Claim Is Not Forfeited

Preliminarily, defendant contends that the People are precluded from raising the restitution fine suspension issue, because it was not preserved for appeal by a proper objection below. As already noted, the trial court had inquired whether "there [is] a motion by the Defense," to which defense counsel had responded, "Yes, your Honor. Make the same motion to stay and suspend all fines and fees and dismiss all of her cases pursuant to 1203 on the ROC contract." The prosecutor raised the "Same objection as to the fines and fees."

Defendant urges that the prosecutor's objection was insufficient to preserve the matter for appeal. We reject the argument for several interrelated reasons.

■ First, the objection that was made was sufficient to satisfy the purposes of the "specific objection" rule. "The critical point for preservation of claims on appeal is that the asserted error must have been brought to the attention of the trial court." (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649 [40 Cal.Rptr.3d 501].) As to claims of error in the admission and exclusion of evidence, for example, " 'The reason for the requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal.' " (*People v. Partida* (2005) 37 Cal.4th 428, 434 [35 Cal.Rptr.3d 644, 122 P.3d 765].) In addition, "a 'contrary rule would deprive the People of the opportunity to cure the defect at trial and would "permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal." ' " (*Ibid.*) As the California Supreme Court stated in *Partida*, "Thus, the requirement of a specific objection serves important purposes. But, to further these purposes, the requirement must be interpreted reasonably, not formalistically. 'Evidence Code section 353 does not exalt form over substance.' [Citation.] The statute does not require any particular form of objection. Rather, 'the objection must be made in such a way as to alert the trial court to the nature of the anticipated evidence and the basis on which exclusion is sought, and to afford the People an opportunity to establish its admissibility.' " (*Id.* at pp. 434–435.)

Here, the only matter or ruling in issue was the suspension or dismissal of the fines and fees. That was, in turn, the sole matter to which the People objected. No particular form of objection was necessary, so long as the court and the opposing party were apprised of the nature of the People's objection. As noted, the ground raised on appeal is strictly one of statutory construction; rather than an evidentiary ruling, which depends upon foundational matters and the exercise of the court's discretion, the nature of the claim here is a purely legal one, to the effect that the trial court had no discretion to exercise with respect to the suspension or dismissal of the restitution fine. The objection that was raised was sufficient to alert the trial court to this purely legalistic claim and, thus, the purpose of the "specific objection" rule was satisfied.

Second, we view the matter in context, i.e., drug court. The proceedings on the date in question included a graduation ceremony for defendant and a number of other persons, each of whom had successfully completed the ROC

program. The ROC program was a rigorous treatment program, encompassing five phases, with each phase addressing multiple aspects of rehabilitation, including individual and group counseling, drug testing, obtaining employment and/or education, volunteer service, and other activities. The program required a commitment of at least 18 months, including at least six months in the aftercare (final) phase. Where multiple parties were before the court, each seeking to set aside the pleas in his or her individual case, it is understandable that both the defense attorneys and the People's representative would fail to fully articulate repetitive motions and objections. The reporter's transcript of the hearing in defendant's case consists of only one page. The reporter's transcript articulates defense counsel's request to suspend all the fines and fees. The reporter's transcript and the court's minutes reflect the trial court's ultimate order suspending all the fines and fees. Inferentially, the prosecutor's "objection as to the fines and fees," refers to the defense request to order the fines and fees suspended, which request the court then proceeded to fulfill. It could hardly be understood otherwise. Just as defendant's counsel made the "same motion" as had been made in other cases (i.e., to suspend all fines and fees and to dismiss all the charges under Pen. Code, § 1203), the prosecutor made the "same objection," specifically "as to the fines and fees." The objection clearly refers to antecedent similar objections, as to which the foundation was understood among the parties and the court.[2]

 Third, and finally, not all issues are subject to the "specific objection" rule. The present issue is not in the nature of an evidentiary ruling. Although it is true that the waiver doctrine also applies to "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" (*People v. Scott* (1994) 9 Cal.4th 331, 353 [36 Cal.Rptr.2d 627, 885 P.2d 1040]), the gist of the People's contention on appeal is that suspending or dismissing the restitution fine is not such a "discretionary sentencing choice." Rather, the People contend that the trial court possesses no discretion to do so. Thus, the claim is one, in essence, of a species of unauthorized sentence. A claim of unauthorized sentence is reviewable on appeal even in the absence of an objection in the trial court; it is correctable at any time. (See *People v. Stowell* (2003) 31 Cal.4th 1107, 1113 [6

---

[2] We have ordered the record augmented with the reporter's transcript of the entire hearing on the date and time in question. With respect to the first program graduate, defense counsel moved to dismiss all the pending cases, and to "suspend all fines and fees . . . pursuant to [Penal Code section] 1203." The prosecutor objected, stating that, "as to all the ROC people, the People are opposing the fines and fees being suspended." Thereafter, both counsel simply repeated the motion and objection litany in abbreviated form. However, in each case, the articulated or understood basis for the suspension of the fines and fees, including the restitution fine, was Penal Code section 1203, which concerns the eligibility for and the terms of probation, including the setting of a restitution fine. (Pen. Code, § 1203, subd. (b)(2)(D)(i), (ii).) As already explained, we believe the People's objection was sufficient to identify the issue and to preserve it for review on appeal.

Cal.Rptr.3d 723, 79 P.3d 1030].) A challenged sentence falls within the "unauthorized sentence" exception (to the general rule that a specific objection to a sentencing error is required) when it "could not lawfully be imposed under any circumstance in the particular case," such that it is " 'clear and correctable' independent of any factual issues presented by the record at sentencing." (*Scott*, at p. 354.) The claim presented by the People in this case is just such a claim.

The prosecutor's objection at the hearing was thus sufficient to preserve for appeal the issue that the trial court erred in entering its order suspending, dismissing, or otherwise disposing of the restitution fine and, in any case, the claim may be characterized as a species of unauthorized sentence, as to which no objection was required.

We next examine the merits of the statutory claim.

### III. The Trial Court Could Properly Suspend or Dismiss the Restitution Fines in the Context of Drug Court Early Termination of Probation

A. *Background of the Law Concerning Victim Restitution and Restitution Fines*

1. *Legislative History: Victims' Bill of Rights*

In June 1982, the electorate passed Proposition 8, known as "The Victims' Bill of Rights." Among other things, Proposition 8 declared a state constitutional right of crime victims to restitution from those persons convicted of crimes, which crimes caused losses to the victims. (Cal. Const., art. I, § 28, subd. (b)(13)(A).) In response to the new constitutional provisions, the Legislature amended some old statutes and enacted new ones to implement the right to restitution. (See *People v. Giordano* (2007) 42 Cal.4th 644, 652 [68 Cal.Rptr.3d 51, 170 P.3d 623].)

The statutes recognize two kinds of restitution: (1) restitution fines (Pen. Code, § 1202.4, subd. (b)), which are not directly related to the amount of loss sustained by a victim, and (2) direct restitution to the victim (Pen. Code, § 1202.4, subd. (f)), which is based on the amount of the loss the victim actually sustained. The purposes of the two kinds of restitution are different. The imposition of a restitution fine is punishment. (See *People v. Kunitz* (2004) 122 Cal.App.4th 652, 656 [18 Cal.Rptr.3d 843].) The purpose of direct victim restitution, however, is to reimburse the victim for economic losses caused by the defendant's criminal conduct, i.e., to make the victim reasonably whole. (*People v. Taylor* (2011) 197 Cal.App.4th 757, 763 [128

Cal.Rptr.3d 399]; cf. *People v. Phu* (2009) 179 Cal.App.4th 280, 283 [101 Cal.Rptr.3d 601].) Secondary goals of direct restitution include rehabilitation of the defendant and deterrence of future criminality. (*People v. Jennings* (2005) 128 Cal.App.4th 42, 57 [26 Cal.Rptr.3d 709].)

Formerly, both restitution fines and direct victim restitution were limited to a maximum imposition of $10,000. (See Gov. Code, former § 13967, subd. (c); Pen. Code, § 1202.4, former subd. (b).) Now, however, the victim (direct) restitution statute requires the trial court to order full restitution, in the amount of the losses resulting from the defendant's criminal acts, unless the court finds clear and compelling reasons for not doing so, and states these reasons on the record. (Pen. Code, § 1202.4, subds. (f), (g).)[3]

█ The restitution fines are not paid directly to the victims of crime. Rather, they are deposited to the Restitution Fund. (Pen. Code, § 1202.4, subd. (e).) The Restitution Fund is in the State Treasury Department, and is used to compensate victims for certain kinds of "pecuniary losses they suffer as a direct result of criminal acts." (Gov. Code, § 13950, subd. (a).) Crime victims may apply to the Restitution Fund as one avenue to recover monetary losses caused by criminal conduct. "If the victim has received assistance from the Victim Compensation Program under Govt.C. 13950 et seq., restitution to the victim is also paid to the Restitution Fund. (P.C. 1202.4(f)(2).)" (3 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Punishment, § 110, p. 194.) Thus, when direct victim restitution has been satisfied by the victim's application to the victim compensation program, the amounts a defendant is ordered to pay as direct victim restitution are instead paid to the Restitution Fund. "[T]o the extent that the victim has received assistance from the Restitution Fund under Govt.C. 13950 et seq. . . . , payment must be made to the fund. (P.C. 1202.4(f)(2).)" (3 Witkin & Epstein, *supra*, Cal. Criminal Law, Punishment, § 117, p. 204.) Penal Code section 1202.4, subdivision (j), includes a reciprocal provision, to the effect that "[t]he making of a restitution order pursuant to subdivision (f) shall not affect the right of a victim to recovery from the Restitution Fund as otherwise provided by law, except to the extent that restitution is actually collected pursuant to the order." Thus, direct victim restitution payments, which the victim actually collects from the defendant, are offset from the victim's eligibility to recover from the Restitution Fund.

An order for direct victim restitution does not preclude a separate civil action by the victim. Penal Code section 1202.4, subdivision (j), also

---

[3] Penal Code section 1202.4, subdivision (b)(1), formerly provided that the minimum restitution fine for a felony be $200. However, the minimum amount for a felony is $240 beginning January 1, 2012, $280 beginning January 1, 2013, and $300 beginning January 1, 2014. (Stats. 2011, ch. 358, § 1, eff. Jan. 1, 2012.)

provides that "[r]estitution collected pursuant to this subdivision shall be credited to any other judgments for the same losses obtained against the defendant arising out of the crime for which the defendant was convicted."

Penal Code section 1202.4, subdivision (f)(11), provides that, "If a defendant has any remaining unpaid balance on a restitution order or fine 120 days prior to his or her scheduled release from probation or 120 days prior to his or her completion of a conditional sentence, the defendant shall prepare and file a new and updated financial disclosure . . ." to facilitate future enforcement of the remainder of the unpaid restitution or restitution fine. Penal Code section 1202.4, subdivision (i), provides that "A restitution order imposed pursuant to subdivision (f) shall be enforceable as if the order were a civil judgment." Penal Code section 1202.4, subdivision (m), provides that, "In every case in which the defendant is granted probation, the court shall make the payment of restitution fines and orders imposed pursuant to this section a condition of probation. Any portion of a restitution order that remains unsatisfied after a defendant is no longer on probation shall continue to be enforceable by a victim pursuant to Section 1214 until the obligation is satisfied."

2. *Unpaid Portions of Victim Restitution and Restitution Fines Generally Survive, Even When the Defendant Is No Longer on Probation*

■ The complex intertwining of the various statutory provisions has resulted in the recognition that, in general, the Legislature intended the unpaid balance of restitution orders to survive a probationary term.

a. *A restitution fine survives the termination of probation when probation is revoked*

In *People v. Chambers* (1998) 65 Cal.App.4th 819 [76 Cal.Rptr.2d 732], the Third District Court of Appeal considered the question with respect to restitution fines. When the defendant was first sentenced, the trial court had imposed a restitution fine of $200. Later, the court revoked the defendant's probation, and made a second order imposing a restitution fine of $500. The appellate court concluded that the trial court was not authorized to impose a second restitution fine, because the initial restitution fine survived the revocation of probation. The imposition of a restitution fine was mandatory upon conviction of a felony, whether or not the defendant was admitted to probation. (*Id.* at p. 821.) The restitution fine could be imposed as a condition of probation, if probation were granted. (*Id.* at pp. 821–822.) But, "[e]ven if the restitution fine was imposed as a condition of probation, the statutes contemplated that it would survive the probationary term. For example,

former Penal Code section 1202.4, subdivision (c) provided that, if a restitution fine was imposed as a condition of probation but stayed, the stay would be lifted upon revocation of probation and imposition of sentence. While the restitution fine in this case was not stayed at the time probation was granted, it is apparent from the statutory scheme in existence in 1993 that it survived the revocation of the defendant's probation because (1) the court was required to impose a restitution fine regardless of whether probation was granted, and (2) former Penal Code section 1202.4, subdivision (c) exhibits the Legislature's intent not to void a restitution fine when probation is revoked. Furthermore, there was no provision for imposing a restitution fine upon revocation of probation and the triggering event for imposition of a restitution fine was conviction. (Former Gov. Code, § 13967; former Pen. Code, § 1202.4.)

"In 1994, the Legislature amended Government Code section 13967 and Penal Code section 1202.4, deleting the requirement of a restitution fine from section 13967 and incorporating it into section 1202.4. (Stats. 1994, ch. 1106, §§ 2, 3.) Present law still requires imposition of a restitution fine when a person is convicted of a felony, regardless of whether probation is granted. (Pen. Code, § 1202.4, subd. (b) [requirement of fine unless compelling and extraordinary reasons found].) If the defendant is granted probation, the court must make payment of restitution and the restitution fine conditions of probation. (Pen. Code, § 1202.4, subd. (m).) Restitution to a victim remaining unpaid at the end of the probationary term is enforceable against the defendant as if it were a civil judgment. (Pen. Code, §§ 1202.4, subd. (m), 1214.)

"There is nothing in the current statutory scheme to suggest any change in the Legislature's intent to have a restitution fine survive the revocation of probation. Indeed, the statutory scheme suggests otherwise. Restitution fines are required in all cases in which a conviction is obtained. Furthermore, there is no provision for imposing a restitution fine after revocation of probation. The triggering event for imposition of the restitution fine is still conviction. (Pen. Code, § 1202.4, subd. (b).)" (*People v. Chambers, supra,* 65 Cal.App.4th at p. 822.)

*People v. Arata* (2004) 118 Cal.App.4th 195 [12 Cal.Rptr.3d 757] was another decision of the Third District Court of Appeal, which reiterated the principles set forth in *Chambers. Arata* paralleled the events in *Chambers*: the defendant was admitted to probation in November 1999, at which time the trial court imposed a $600 restitution fine pursuant to Penal Code section 1202.4. (*Arata,* at p. 198.) The defendant thereafter violated his probation on several occasions, and was reinstated on probation, with modifications to the sentence or probation terms. Ultimately, the trial court revoked the defendant's probation and sentenced him to state prison for four years, lifting the

stay of execution on the sentence. In addition, at the time the court sentenced the defendant to state prison, it ordered the defendant to pay a restitution fine of $800. (*Id.* at p. 201.) The defendant in *Arata*, like the defendant in *Chambers*, argued that the trial court erred in imposing a second restitution fine at the time of the state prison sentence, because it had already imposed a restitution fine at the time the defendant was granted probation. The *Arata* court stated, "Despite the fact that the restitution fine is imposed as a condition of probation, however, it survives the probationary term" (*id.* at p. 201), citing its earlier decision in *People v. Chambers, supra,* 65 Cal.App.4th 819. "[B]ecause the first restitution fine remained in effect, the trial court was without authority to impose the second restitution fine." (*Arata,* at p. 202.) Following *Chambers*, the court struck the second, $800, restitution fine, and left in force the $600 restitution fine originally imposed at the time of granting probation. If the defendant had paid the $600 restitution fine, he was entitled to credit for having paid it. If he had not paid the $600 restitution fine, then his obligation to pay continued during and, if necessary, after his prison term. (*Id.* at p. 203.)

Additional cases apply the same principles in similar contexts. In *People v. Kleinman* (2004) 123 Cal.App.4th 1476 [20 Cal.Rptr.3d 885], the defendant struck a pedestrian with his car and fled the scene. In 1998, he pleaded no contest to a charge of hit and run causing injury. The trial court granted probation and imposed a restitution fine as a condition of probation, although it left the amount of the restitution fine open to future setting, to allow the victim time to gather information on the amount of his medical costs and lost wages. In 2001, the trial court revoked the defendant's probation and issued a bench warrant. In 2003, the defendant waived his right to a probation violation hearing and admitted the violation of probation. The trial court sentenced the defendant to state prison for two years and ordered direct victim restitution in the amount of $9,000. On appeal, the defendant urged that the restitution order was no longer authorized at the time he was sentenced to state prison, on the view that "the gravamen of the hit and run offense is fleeing the scene, which did not cause [the victim's] injuries. The noncriminal accident did." (*Id.* at p. 1479.) The appellate court rejected the contention as without merit. (*Ibid.*) In *People v. Carbajal* (1995) 10 Cal.4th 1114 [43 Cal.Rptr.2d 681, 899 P.2d 67], the California Supreme Court had settled the question that victim restitution is properly imposed as a condition of probation for a hit-and-run offense causing damage. A defendant may be ordered to pay restitution for the damage as a condition of probation. The *Kleinman* court declined to resolve the issue whether an order for restitution is proper for a hit-and-run conviction when the defendant is sentenced to state prison, because (1) the restitution condition had been properly imposed as a condition of the defendant's probation (as in *Carbajal*), and (2) the restitution originally imposed as a condition of probation survived the revocation of the

defendant's probation (as in *Chambers* and *Arata*), notwithstanding that the specific amount of restitution had not been initially set at the time probation was granted.

In *People v. Urke* (2011) 197 Cal.App.4th 766 [128 Cal.Rptr.3d 405], a more recent case, the appellate court again had occasion to hold that, when a defendant's probation is revoked, the mandatory restitution fine imposed as a condition of probation survives the revocation of probation, so that it is improper and beyond the trial court's authority to impose another restitution fine upon sentencing the defendant to state prison. (*Id.* at p. 779.)

In *People v. Cropsey* (2010) 184 Cal.App.4th 961 [109 Cal.Rptr.3d 324], the trial court purported to "reimpose" a $200 restitution fine when it revoked and reinstated probation. The appellate court held that the trial court had not erred, because it had not imposed a second restitution fine; rather, it had effectively confirmed the same restitution fine originally imposed. The *Cropsey* court noted that the language purporting to "reimpose" a restitution fine was inconsistent with the principle of *Chambers* and *Arata*, that the restitution fine originally imposed survives the revocation of probation, and continues in effect. "Simply stated, there is no need to reimpose an extant restitution fine." (*Id.* at p. 966.) "Where a restitution fine(s) has been previously imposed, the trial court should simply say, 'The abstract of judgment should reflect the restitution fine(s) previously imposed.' " (*Ibid.*)

■ All these cases highlight the general principles that (1) imposition of restitution orders (victim restitution and a restitution fine) is mandatory, (2) when a defendant is granted probation, any such mandatory restitution fine must be made a condition of probation, and (3) the mandatory restitution fine continues in force even if a defendant's probation is revoked.

 b. *A restitution fine generally survives the termination of probation*
 *when a probationer completes the probationary term*

All of the cited cases concern the survival of the restitution fine when probation is revoked, and the defendant is sentenced to state prison. None has applied the stated principles in a context where the probationary term has been successfully served (expired) without revocation.

Defendant argues that the principle articulated in the cited cases—i.e., that the restitution fine survives a revocation of probation—"has no bearing on whether the trial court has the authority to suspend the payment of the restitution fine upon the termination of a successful term of probation." The People contend, on the other hand, that the survival of the restitution fine upon the unsuccessful termination of probation should apply equally in cases

where a defendant completes probation successfully: "[I]t is a logical corollary [to the survivability of the restitution fine on the revocation of probation] that a trial court does not have authority to suspend any unpaid balance of the restitution fine upon a defendant's successful completion of probation. Otherwise, the 'survivability' of the restitution fine after probation would be negated. . . . [¶] Defendant is correct that procedural circumstances in each of the four cases cited by the People are not identical to the procedural circumstances in the instant case. However, that observation does not detract from the proposition that a restitution fine survives the probationary term."

■ We agree with the People's contention that, in principle, a mandatory restitution fine will survive after the end of a period of probation, regardless of whether the probation was terminated negatively (e.g., revocation) or positively (successfully completed). Even though the cited cases all concerned revocation of probation, we discern in *Chambers* and *Arata* the legislative basis for the survivability of the restitution fine: i.e., the conviction itself.

As the court made clear in *Chambers*, imposition of a restitution fine is mandatory, whether or not the defendant is granted probation. The imposition of a restitution fine is required unless compelling and extraordinary reasons are found to overcome the requirement. Restitution to a victim remaining unpaid at the end of a probationary period is enforceable against the defendant as if it were a civil judgment. Penal Code section 1202.4, subdivision (f)(11), expressly provides that a probationer approaching the expiration of the probationary period (120 days) must file an updated financial disclosure statement, in direct contemplation of the continuing obligation to pay, even after probation has ended. All these factors show the legislative intent to have the restitution fine survive the probationary period, not merely to survive a revocation of probation. "*The triggering event* for imposition of the restitution fine *is still conviction*." (*People v. Chambers, supra,* 65 Cal.App.4th at p. 822, italics added.)

■ *Arata* similarly articulates that, "when a person *is convicted* of a felony, a restitution fine must be imposed, irrespective of whether probation is granted." (*People v. Arata, supra,* 118 Cal.App.4th at p. 201, italics added.) Thus, both probationers and defendants who are not granted probation are subject to mandatory imposition of a restitution fine. The difference is that the restitution fine must also be made a condition of probation for any defendant admitted to probation. The mandatory orders for restitution are made part of the conditions of probation because "[f]ailure to do so would lead to successful probationers avoiding the mandatory nature of subdivision (b)." (*Id.* at p. 203.)

Under the statutes, the defendant is responsible to pay whatever portion of the restitution fine remains unpaid, even after completion of probation or prison sentence. As the *Arata* court noted, "a restitution fine imposed as a condition of probation survives a subsequent revocation *and state prison commitment.* [Citation.] Defendant is either entitled to credit for its payment or is responsible for paying it *during and, if necessary, after his prison sentence.*" (*People v. Arata, supra,* 118 Cal.App.4th at p. 203, italics added.)

An extant criminal conviction is therefore clearly demarcated as the event that brings into existence the mandate to impose a restitution fine. It is also the basis upon which the mandated restitution order remains in force following a period of probation and after a prison sentence has been completed.

B. *General Principles Applicable to Dismissal of a Charge Under Penal Code Section 1203.4*

Penal Code section 1203.4 provides in part: "(a) [¶] (1) In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall, at any time after the termination of the period of probation . . . be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty . . . and . . . the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted, except as provided in Section 13555 of the Vehicle Code. The probationer shall be informed, in his or her probation papers, of this right and privilege and his or her right, if any, to petition for a certificate of rehabilitation and pardon. . . . However, in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed. The order shall state, and the probationer shall be informed, that the order does not relieve him or her of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery Commission. [¶] (2) Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have in his or her custody or control any firearm or prevent his or her conviction [under Section 12021.] [¶] (3) Dismissal of an accusation or information underlying a conviction pursuant to this section does not permit a person prohibited from holding public office as a result of that conviction to hold public office. . . ."

### 1. *Three Scenarios for Relief Under Penal Code Section 1203.4*

█ There are three circumstances in which a defendant may apply for relief under Penal Code section 1203.4: if, "(a) he has fulfilled the conditions of his probation for the entire period; (b) he has been discharged before the termination of the period of probation; or (c) in any case in which a court, in its discretion and the interests of justice, determines he should be granted relief." (*People v. Butler* (1980) 105 Cal.App.3d 585, 587 [164 Cal.Rptr. 475].)

Under either of the first two scenarios, the defendant is entitled as a matter of right to the dismissal of the charge. (See *People v. Chandler* (1988) 203 Cal.App.3d 782, 788 [250 Cal.Rptr. 730] ["[A] defendant moving under Penal Code section 1203.4 is entitled as a matter of right to its benefits upon a showing that he 'has fulfilled the conditions of probation for the entire period of probation.' It was apparently intended that when a defendant has satisfied the terms of probation, the trial court should have no discretion but to carry out its part of the bargain with the defendant."]; *People v. Butler, supra,* 105 Cal.App.3d at p. 589 ["Once probation is terminated early, a later judge who is requested to grant relief under section 1203.4 is without discretion to deny relief."].) Under the third scenario, the court exercises its discretion whether to grant relief in the interests of justice. (*People v. McLernon* (2009) 174 Cal.App.4th 569, 574 [94 Cal.Rptr.3d 570] ["The last [scenario] requires the court to determine whether, in its discretion and the interests of justice, the relief should be granted."]; *Butler,* at p. 587 ["A grant of relief in the third situation is clearly discretionary."].)

#### a. *First scenario: fulfillment of conditions of probation for the entire probationary period*

█ Qualification for relief under the first scenario—fulfilling the conditions of probation during the entire probationary period—requires exactly that: fulfillment of *all* the conditions of probation throughout the *entire* period of probation. Any violation of any of the probationary terms will disqualify a probationer from seeking dismissal under the first scenario.

In *People v. Chandler, supra,* 203 Cal.App.3d 782, for example, the Court of Appeal held that a probationer who had not fully paid all of the court-ordered restitution by the end of his probationary period had "not met the statutory requirement of fulfilling 'the conditions of his probation for the entire period thereof.' " (*Id.* at p. 789.) The trial court could therefore properly deny a motion for dismissal of the charge under the first scenario.

Similarly, in *People v. McLernon, supra,* 174 Cal.App.4th 569, a single positive drug test during the probationary period disqualified the defendant there from mandatory relief under the first scenario. (*Id.* at pp. 573, 575.)

*People v. Butler, supra*, 105 Cal.App.3d 585, an earlier case than *Chandler*, likewise held that the failure to pay the full amount of restitution disqualified the defendant from relief under the first scenario: "Butler does not contend he fulfilled all the conditions of his probation. One of the conditions required him to pay $2,500 in restitution to the victim of his grand theft within four years. Within that four-year period he paid only $530." (*Id.* at p. 587.) However, the failure to pay restitution in full was no impediment to mandatory relief under scenario two.

### b. *Second scenario: termination of probation and discharge before the period of probation has expired*

The second scenario, which also qualifies the probationer for mandatory dismissal of the charge, requires a termination of probation and discharge before the probationary period has expired.

The defendant in *Butler* recognized that he did not qualify for relief under the first scenario, because he had not completely paid all the ordered restitution. "Rather, he contends he is entitled to relief for having been discharged from his probation early." (*People v. Butler, supra*, 105 Cal.App.3d at p. 587.) There, near the end of the defendant's original probationary period, the trial court had modified his probation by extending it an additional six months, and by adding a new condition: The defendant was required to be medically examined to determine whether he was totally disabled. The defendant underwent the examination, and the medical report did state that he was totally disabled. The court terminated the defendant's probation, ending it three months before the extended termination date. It was immaterial that the termination did not come prior to the expiration of the original termination date; the original termination date "no longer exist[ed]" (*id.* at p. 588) after the trial court extended the probationary period. The authority to terminate probation early "is found in section 1203.3. It allows a court to terminate probation at any time 'when the ends of justice will be subserved thereby, and when the good conduct and reform of the person so held on probation shall warrant it . . . .' The order terminating probation states 'good cause exists to terminate probation.' The judge believed Butler should be relieved from the restrictions of his probation. This decision is final. The People cannot now, in effect, collaterally attack the propriety of the judge's decision to terminate early. Once probation is terminated early, a later judge who is requested to grant relief under section 1203.4 is without discretion to deny relief. The relief requested should have been granted in this case." (*Id.* at p. 589.) The defendant was therefore entitled to have his conviction dismissed under the second scenario.

*People v. Hawley* (1991) 228 Cal.App.3d 247 [278 Cal.Rptr. 389] followed *Butler*. In *Hawley*, the defendant had been placed on probation, and had some

early problems complying with all the terms. He was arrested for burglary, but the victim declined to prosecute. He was also arrested for driving under the influence, though charges were never filed for lack of evidence. After these early lapses, however, the defendant performed well on probation and received favorable reports. The defendant remained arrest free, paid his restitution fine in full, and completed therapy. The trial court terminated the defendant's probation early, and the defendant applied for " 'release from penalties and dismissal' under section 1203.4. The court denied the petition on the sole ground that the 'nature of the offense [nonforcible sodomy of a person under age 18] is just too serious.' " (*Id.* at p. 249.) The appellate court reversed, holding that the defendant was entitled to relief as a matter of right if he met the conditions prescribed in the statute. The defendant did not purport to apply under the first scenario, as he had not been able to show complete compliance with all terms of probation throughout the entire term. He did show, however, that probation had been terminated early. He was therefore entitled to have the plea changed to not guilty and the charge dismissed, regardless of the seriousness of the charge.[4] (228 Cal.App.3d at p. 250, fn. 4. ["the seriousness of the original offense was wholly irrelevant . . ."].)

In *Chandler*, just as the defendant did not qualify for relief under the first scenario, he also did not qualify under the second scenario, because he had not been discharged prior to the termination of probation. Instead, one day before his probation was set to expire, the trial court revoked probation to retain jurisdiction; it then set a hearing on violation of probation two months later. At the revocation hearing, the trial court reinstated, and then terminated the defendant's probation. (*People v. Chandler, supra,* 203 Cal.App.3d at p. 790.) The defendant's probation was thus terminated in effect by expiration on the last day, and he did not meet the statutory criterion of having been "discharged *prior* to the termination of the period of probation." (Pen. Code, § 1203.4, subd. (a)(1), italics added.)

"Like defendant [(i.e., Chandler)] in the case before us, the probationer in *Butler* failed to pay a substantial portion of the court-ordered restitution. But unlike defendant here, the defendant in *Butler* never contended he had fully complied with the terms of probation. Instead, the latter claimed that because the trial court had terminated probation three months before its expiration, he was entitled to a dismissal under Penal Code section 1203.4. The reviewing court agreed, holding that once probation is terminated early, a trial court has no discretion to deny relief under section 1203.4. [Citation.] In so holding,

---

[4] Some offenses are expressly excluded from relief under Penal Code section 1203.4. Among these is an offense under Penal Code section 286, subdivision (c) (sodomy of a person under age 14 by a person at least 10 years older, or forcible sodomy). The offense in *Hawley* was under Penal Code section 286, subdivision (b).

the *Butler* court followed the statutory mandate to grant relief in any case in which a defendant 'has been discharged prior to the termination of probation.' That situation is not present here, where the trial court *terminated probation at the end of the probationary period and at no time excused defendant from complying* with the conditions of probation prior to the termination of probation." (*People v. Chandler, supra,* 203 Cal.App.3d at p. 790, italics added.)

### c. Third scenario: discretionary relief in the interests of justice

In *People v. McLernon, supra,* 174 Cal.App.4th 569, the defendant had been convicted of possession of a controlled substance for sale. He was placed on probation. In 1995, he had one violation of probation when he tested positive on one of his drug tests. After that, however, he remained clean and sober, and he paid all fines and costs ordered by the court. In 2001, he filed his first motion to dismiss the conviction under Penal Code section 1203.4. The court denied the motion in a minute order, which did not recite the reason for denial. The defendant moved a second time for relief in 2007. This time, he filed with a Judicial Council form, but it was incomplete in various respects (e.g., no proof of service, omitted date of conviction, and the statement of assets was not signed or dated). The trial court again denied relief; this time the minute order recited, " 'Defendant's petition for expungement is denied. [¶] Petition was previously submitted and denied on March 6, 2001 due to unsatisfactory performance on probation.' " (*McLernon,* at p. 573.) The defendant later submitted a third petition for relief; for the first time, the petition identified the discretionary "interests of justice" ground as the basis for his request to dismiss his conviction. The third motion attached the defendant's declaration, to the effect that he had only suffered the one conviction, he was not currently facing charges or serving any sentence, he had paid all fines and costs, he had tested positive during one drug test in 1995, but he had completed a 90-day treatment program and had remained drug free since that time. He also averred the positive steps he had taken in his employment and personal circumstances (professional employment as an architect and he was married with four children). He wanted to be able to join professional associations, to serve as a volunteer at a local high school, and participate in elective office; these were the reasons he sought relief from the conviction. The trial court summarily rejected the third petition, stating that it had previously been presented and denied in 2001 and 2007. (*Id.* at pp. 573–574.)

 The appellate court reversed and remanded with directions that the trial court consider the merits of the defendant's petition for discretionary relief. The denials of the first two petitions were assertedly for the defendant's unsatisfactory performance on probation. That "unsatisfactory" performance on probation consisted, so far as the record showed, solely of the

single positive drug test during the probationary period. That positive test did effectively preclude the defendant from showing that he qualified under the first scenario—having successfully complied with all the terms of probation for the entire probationary period. He was also disqualified from relief under the second scenario, as his probation had not been terminated early. However, he was eligible to apply for discretionary relief. The trial court had patently failed to consider the matter as one of discretion and, thus, the case was ordered remanded with directions to reconsider the motion on the discretionary ground. The appellate court held that a court considering a discretionary motion was not limited to consideration solely of a defendant's conduct during the probationary period. "The statute simply states that relief is available in the court's discretion in the interests of justice." (*People v. McLernon, supra,* 174 Cal.App.4th at p. 575.) The court held that, "[I]n determining whether to grant relief under the discretionary provision, the trial court may consider any relevant information, including the defendant's postprobation conduct." (*Id.* at p. 577.) Indeed, the amendment that added the third scenario under which a probationer could apply for discretionary relief under Penal Code section 1203.4 was enacted in response to a similar case of postconviction rehabilitation: "[T]he amendment was requested by the attorney for a defendant who, after a probation violation, completed his probation with no further violations, raised his child alone, and then went to college, worked without pay for the State Parole Board, and was trying to become a social worker. Although the trial court in his case expressed a desire to grant relief under section 1203.4, it concluded it could not do so because of the defendant's parole [*sic*: probation] violation. The amendment to section 1203.4 was designed to give courts the ability to grant relief in these circumstances." (*McLernon,* at pp. 576–577.)

### 2. *Effects or Consequences of Granting Relief Under Penal Code Section 1203.4*

■ The "release[] from all penalties and disabilities" provided in Penal Code section 1203.4 is sometimes referred to as "expungement" of the conviction. The People correctly point out, however, that Penal Code section 1203.4 does not, strictly speaking, "expunge" the conviction, nor render the conviction "a legal nullity." (See *People v. Frawley* (2000) 82 Cal.App.4th 784, 791 [98 Cal.Rptr.2d 555].) For example, charges dismissed under Penal Code section 1203.4 may be treated as convictions for some purposes (e.g., impeachment with prior conviction in a future prosecution). However, the "release[] from all penalties and disabilities" is a palpable benefit, such that the conviction may be treated as if it were not a conviction for most purposes.

Penal Code section 1203.4, subdivision (a), provides that probationers who meet the requisite criteria shall have the charge dismissed, "and *except as*

*noted below*, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted . . . ." The specific exceptions are contained within Penal Code section 1203.4, as follows: A defendant is released from penalties and disabilities, "except as provided in Section 13555 of the Vehicle Code. . . . [In addition], in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed. The order [of dismissal] shall state, and the probationer shall be informed, that the order does not relieve him or her of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery Commission. [¶] (2) Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have in his or her custody or control any firearm or prevent his or her conviction under [Section 12021.] [¶] (3) Dismissal of an accusation or information underlying a conviction pursuant to this section does not permit a person prohibited from holding public office as a result of that conviction to hold public office." (Pen. Code, § 1203.4, subd. (a).)

Penal Code section 290.007 also specifically excepts the sex registration requirement (Pen. Code, § 290) from relief under Penal Code section 1203.4. " 'California decisions have established that the "penalties and disabilities" resulting from conviction, from which a probationer may be released pursuant to . . . section 1203.4, do not include nonpenal restrictions or qualifications imposed for public protection, such as licensing of attorneys [citation], physicians [citation], and vendors of alcoholic beverages [citation]; qualification for employment as a peace officer [citations]; and the regulation of participants in parimutuel wagering [citation]. . . .' [Citations.]" (*Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1114 [93 Cal.Rptr.3d 736].) "Further, United States Supreme Court precedent establishes that a retroactive measure requiring the disclosure of sex offender information on a Megan's Law Web site such as that required under California law is protective rather than punitive, and imposes no affirmative disability on the offender." (*Ibid.*) In addition, unlike the matter of fines and fees, mandatory lifetime sex registration is not a permissible subject of plea agreement negotiation. (*In re Watford* (2010) 186 Cal.App.4th 684, 690 [112 Cal.Rptr.3d 522].)

All of these exceptions to relief under Penal Code section 1203.4 are either express exceptions, or have been determined to fall outside the category of criminal penalties and disabilities. As to other consequences, however, a

defendant who is granted relief under Penal Code section 1203.4 is entitled to treat the dismissal of the charges, for most purposes, as an obviation of the conviction.

In *People v. Arata* (2007) 151 Cal.App.4th 778 [60 Cal.Rptr.3d 160],[5] the defendant appealed from denial of his motion under Penal Code section 1203.4 to allow him to withdraw his plea and have the charge dismissed. The issue was whether relief under Penal Code section 1203.4 was a part of the plea bargain agreement the defendant had made, and whether denial of relief would be a significant variation from the terms the defendant had agreed to in his plea bargain. The appellate court ruled in the defendant's favor, remarking that, even though the relief from disabilities was not complete (e.g., dismissal under Pen. Code, § 1203.4 would still require registration as a sex offender, allow impeachment with the dismissed charge in a future trial, disqualify the defendant from firearm possession, and require disclosure of the former conviction to state or local licensing agencies), it nevertheless conferred a significant benefit to the defendant. "[I]t is still a 'reward.' [Citation.] At the time of the plea, it would have enabled defendant to file a petition for a certificate of rehabilitation at the earliest possible time. (§ 4852.01, subd. (c).) It would also have enabled defendant to 'truthfully represent to friends, acquaintances and private sector employers that he has no conviction.' (*People v. Acuna* [2000] 77 Cal.App.4th [1056] at p. 1060 [92 Cal.Rptr.2d 224].)" (151 Cal.App.4th at. p. 788.)

The People point out that the *Arata* court's statement (i.e., that the probationer who obtains relief under Pen. Code, § 1203.4 may " 'truthfully represent . . . that he has no conviction' " (*People v. Arata, supra,* 151 Cal.App.4th at. p. 788)) is dictum, and that it has never been directly held that Penal Code section 1203.4 relief entitles the recipient of that clemency to "truthfully represent" that he or she "has no conviction." As previously noted, although relief under Penal Code section 1203.4 is frequently referred to colloquially as "expungement" of a conviction, it is not, strictly speaking, an actual expungement.

Penal Code section 1203.4, as previously discussed, expressly provides that a beneficiary of the statutory relief must disclose the conviction on applications for public office, public license, or contracting with the state lottery. (Pen. Code, § 1203.4, subd. (a)(1).)

Under the principle of *expressio unius est exclusio alterius,* the *Arata* court may have, not entirely unreasonably, extrapolated the principle that disclosure

---

[5] *People v. Arata, supra,* 118 Cal.App.4th 195, decided by the Third District Court of Appeal in 2004, involves a different person (Joseph Peter Arata) from *People v. Arata, supra,* 151 Cal.App.4th 778 (David Louis Arata), decided in 2007, also by the Third District Court of Appeal.

in other contexts, such as communications with friends, acquaintances, and private sector employees, is not required. Such disclosure is not affirmatively required to be disclosed in the indicated contexts, in contrast to the express requirement of disclosure in the context of public agency applications and communications. Its pronouncement is dictum, however, and has no direct bearing on the issue considered here.

Regardless, *Arata* does still stand for the proposition that relief under Penal Code section 1203.4 is intended to, and does, afford meaningful relief from the consequences of conviction. The dismissal of the charge actually does relieve the beneficiary from significant burdens and disabilities, actually does remove the blemish of a criminal conviction for most purposes, and actually does restore him or her, in significant part, to preconviction status.

The relief from penalties and disabilities, for most purposes, places a defendant who has had a conviction dismissed under Penal Code section 1203.4 on a different footing from other convicted persons. For one thing, it is offered only to those defendants who are admitted to probation. (See *People v. Mendez* (1991) 234 Cal.App.3d 1773, 1780 [286 Cal.Rptr. 216] ["Section 1203.4 applies only to that category of persons who have been admitted to probation and not committed to prison, CYA, or other state institutions."].) For those admitted to probation, those entitled to relief are limited to those probationers who do succeed in any of the three ways identified above (completion of all terms throughout the period of probation, early termination and discharge, relief would be in the best interests of justice).

" 'A grant of relief under section 1203.4 is intended to reward an individual who successfully completes probation by mitigating some of the consequences of his conviction and, with a few exceptions, to restore him to his former status in society to the extent the Legislature has power to do so [citations].' [Citation.]" (*People v. Field* (1995) 31 Cal.App.4th 1778, 1787 [37 Cal.Rptr.2d 803].) "The purpose and hope [of granting probation] are, of course, that through this act of clemency, the probationer may become reinstated as a law-abiding member of society. Removal of the blemish of a criminal record is the reward held out through the provisions of Penal Code, section 1203.4, as an additional inducement. The obvious purpose is to secure law compliance through an attempt at helpful cooperation rather than by coercion or punishment." (*People v. Johnson* (1955) 134 Cal.App.2d 140, 143 [285 P.2d 74].)

In the instant case, the principles applicable to restitution fines, and their persistence after the defendant is no longer on probation, intersect with the

principles applicable to Penal Code section 1203.4, and the release from penalties and disabilities relating to a conviction. We now discuss the interplay of these two lines of analysis as they converge in defendant's case.

C. *The Suspension or Dismissal of the Unpaid Portion of the Restitution Fines Was Proper*

We conclude that the trial court in this case did have the authority to suspend, dismiss, or otherwise eliminate the enforcement of the remaining unpaid portion of the restitution fines. We examine three separate theories, which might support our conclusion. First, the triggering event requiring imposition of a restitution fine in the first instance is conviction. Upon granting defendant's motion pursuant to Penal Code section 1203.4, the court had released defendant from all the penalties and disabilities resulting from the offense. For most purposes, the dismissal of the charge means that defendant does not have a conviction; in the absence of a conviction, the basis for imposing the restitution fine no longer applies. Second, even if it is assumed that the statute mandating imposition of a restitution fine is applicable, despite the dismissal of the underlying charge, the statute itself provides an exception: "(c) The court shall impose the restitution fine *unless it finds compelling and extraordinary reasons for not doing so* and states those reasons on the record." (Pen. Code, § 1202.4, subd. (c), italics added.) The rehabilitation of defendant and reinstatement as a productive member of society, as a result of completing the drug-court-supervised ROC program and dismissal of the charge, might represent such compelling and extraordinary reasons, sufficient to justify finding that the restitution fine should not be imposed, or that it should be no longer enforced. Third, the relief from payment of the restitution fine was a part of defendant's plea bargain and should be honored as a material term of that bargain.

Preliminarily, we determine that the trial court indeed did properly grant defendant's motion pursuant to Penal Code section 1203.4, to change her pleas to not guilty, and to dismiss the charges in each of the three cases.

1. *Defendant Was Properly Granted Relief (Mandatory Dismissal of the Charge) Under Penal Code Section 1203.4*

In this case, defendant had three separate cases pending when she was ultimately admitted to the ROC drug treatment program. Up to that point, she had some violations of probation, with reinstatements. She had one misstep early in the ROC program, but afterward performed very well, and received consistent positive reports from the program administrators. Eventually, defendant successfully completed all five phases of the program, including a total of 18 months of sobriety, with at least six months in the aftercare phase.

She was recommended for graduation from the program. Accordingly, on September 14, 2011, the court terminated defendant's probation early in all three cases. Defense counsel moved immediately for relief under Penal Code section 1203.4; the trial court granted the motion. The court accepted a change of plea to "not guilty," and dismissed all three pending matters.

The motion was properly granted. Clearly, as in other cases discussed *ante*, defendant did not qualify for mandatory relief under the first scenario. She had not fulfilled all the terms of her probation during the entire probationary period. (See, e.g., *People v. Chandler, supra*, 203 Cal.App.3d at p. 789.) Defendant had had some probation revocations and, in addition, she had not fully paid all of the court-ordered restitution fines, $200 in each case.[6]

However, defendant did come within the second scenario. Her probation was ended early, and she was discharged from probation before the regular termination date. Unlike the requirements of the first scenario, a defendant is not required to have successfully fulfilled all the terms of probation for the entire probationary period in order to qualify for relief under Penal Code section 1203.4. Once the trial court had terminated defendant's probation prior to the termination date, the court had no further discretion to deny a motion for relief under Penal Code section 1203.4. (*People v. Butler, supra*, 105 Cal.App.3d at p. 589.)

The People concede that the trial court "did not commit error by granting relief under section 1203.4 . . . ."

### 2. *The Restitution Fine Was Properly Suspended Because Defendant "Had No Conviction"*

After the motion under Penal Code section 1203.4 was granted, defendant was "released from all penalties and disabilities resulting from the offense" (Pen. Code, § 1203.4, subd. (a)), albeit with certain exceptions.

Even though the statutory relief is not a true or complete expungement of the conviction, it is a substantial benefit, and restores the probationer in most respects to preconviction status. The relief takes the form of dismissal of the

---

[6] The trial court, at the time of accepting the plea bargain, expressly ordered the restitution fine stayed in two of the three cases. Manifestly, the terms of all three probations were contemplated to be identical; the failure to specifically stay the payment of the restitution fine in the third case was almost certainly an oversight. The People do not contend otherwise. Even though the trial court had stayed the order for payment of the restitution fines, however, the fact remains that defendant, at the time of discharge, had not fulfilled that condition of her probation. She had paid $100 with respect to one case, and had paid nothing in the other two cases.

charge, and the probationer is, for most purposes, restored to her former status in society (*People v. Field, supra*, 31 Cal.App.4th at p. 1787), reinstated as a law-abiding member of society (*People v. Johnson, supra*, 134 Cal.App.2d at p. 143), and regarded as having the "blemish" of her criminal record "remov[ed]" (*ibid.*).

As our analysis of the history of victim restitution and restitution fines makes clear, the trial court's duty to impose a mandatory order for victim restitution and a restitution fine is triggered by conviction. (*People v. Chambers, supra*, 65 Cal.App.4th at p. 822; accord, *People v. Arata, supra*, 118 Cal.App.4th at p. 202.) A restitution fine survives the revocation of probation because it is tied to the fact of conviction. Even if a probationer completes probation and is discharged, the conviction—the foundation of the restitution fine—remains extant in all respects.

The People argue that, "The restitution fine survives the probationary term. The California Victim Compensation and Government Claims Board must be allowed to exercise its statutory authority to collect a defendant's unpaid restitution fines. Any other interpretation would render the Board's statutory authority to collect the restitution fine a nullity.".

■■■ We disagree. The board's statutory authority to collect unpaid restitution fines applies to restitution fines properly imposed. In most cases, the continuing existence of an underlying conviction will permit the board to collect any portion of a restitution fine that the defendant did not voluntarily pay during the period of probation or prison sentence and parole.

First, we note that not every convicted person is admitted to probation. Those who are not admitted to probation are ineligible for relief under Penal Code section 1203.4 at all. The expiration of a prison sentence and possible period of parole will not affect the existence of the conviction (triggering event requiring imposition of the restitution fine). In any such case, the board will still be empowered to collect any portion of the restitution fine that remains unpaid after the defendant's release from prison and parole. (Cf. *People v. Arata, supra*, 118 Cal.App.4th at p. 203 [A restitution fine would survive and still have to be paid, even after completion of a prison sentence: "Defendant is either entitled to credit for its payment [during probation] or is responsible for paying it during and, if necessary, after his prison sentence."].)

■■■ Second, we reiterate our analysis *ante*, that of those who are admitted to probation, only certain classes of probationers will qualify to have their conviction charge dismissed. A probationer who completes the probationary period but who does so without fulfilling all the terms of

probation will not qualify under the first scenario. A probationer who completes the probationary period without an early termination will not qualify under the second scenario. A probationer who completes the probationary period without being able to establish a claim that the interests of justice merit a dismissal under Penal Code section 1203.4 will not qualify for relief under the third scenario. In all such cases, the conviction will remain, such that the basis for the restitution fine will continue in force. The board is statutorily authorized to collect the unpaid portion, if any, of the restitution fine beyond the period of probation (whether it is ended by revocation or completion) and prison/parole period, whenever the underlying conviction remains intact after those periods have ended.

Thus, restitution orders survive (1) where the defendant is not admitted to probation, but serves and completes a prison sentence (cf. *People v. Arata, supra,* 118 Cal.App.4th at p. 203 [a restitution fine would survive and still have to be paid, even after completion of a prison sentence: "Defendant is either entitled to credit for its payment [during probation] or is responsible for paying it during and, if necessary, after his prison sentence."]); (2) where a defendant is granted probation but probation is revoked (*People v. Chambers, supra,* 65 Cal.App.4th at p. 822; *People v. Arata, supra,* 118 Cal.App.4th at p. 202); and (3) where a defendant is granted probation, and completes the probationary period, without qualifying for relief under Penal Code section 1203.4. In all of these cases, the conviction remains for all purposes, and it is the conviction that triggers the mandatory restitution orders.

In the narrow set of cases where relief has been granted under Penal Code section 1203.4, however, the charge of which the successful probationer was convicted is dismissed, and the probationer thereafter has been relieved of "all penalties and disabilities" normally attendant upon conviction. The foundation of the restitution fine no longer exists, and it is therefore appropriate for the trial court to suspend or dismiss the restitution orders and fines. The existence of a narrow set of exceptions does not negate or nullify the statutory provisions for the survivability of restitution fines, or the authority of the board to collect unpaid restitution fines in the general case.

3. *A Finding of Compelling and Extraordinary Reasons May Justify Suspending or Dismissing the Remainder of the Restitution Fine, but the Court Here Did Not Expressly Make Such a Finding*

Penal Code section 1202.4, the restitution/restitution fine provision, provides that the trial court must ". . . order the defendant to pay both of the following:

"(A) A restitution fine in accordance with subdivision (b).

"(B) Restitution to the victim or victims, if any, in accordance with subdivision (f), which shall be enforceable as if the order were a civil judgment." (Pen. Code, § 1202.4, subd. (a).) In general, therefore, both an order for victim restitution (if a victim has been harmed) and a restitution fine are mandatory. Penal Code section 1202.4, subdivision (b), explains the restitution fine: "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." That is, the imposition of a restitution fine is mandatory, unless the trial court "finds compelling and extraordinary reasons for not doing so," but the court must also "state[] those reasons on the record." (*Ibid.*)

Penal Code section 1203.3, subdivision (a), provides in part that the trial court, in its role of supervision over probationers, "shall have authority at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence. The court may at any time when the ends of justice will be subserved thereby, and when the good conduct and reform of the person so held on probation shall warrant it, terminate the period of probation, and discharge the person so held." This provision is the source of the court's power to terminate probation early, which is one of the circumstances (second scenario) allowing a probationer to withdraw the plea and have the charge dismissed, in Penal Code section 1203.4.

If any term of probation is modified, the court must hold an open hearing with notice to the prosecuting attorney. (Pen. Code, § 1203.3, subd. (b)(1).) The court must state the reasons for the modification on the record. (Pen. Code, § 1203.3, subd. (b)(1)(A).) As to modification of restitution orders, Penal Code section 1203.3 provides: "(4) The court may modify the time and manner of the term of probation for purposes of measuring the timely payment of restitution obligations or the good conduct and reform of the defendant while on probation. The court shall not modify the dollar amount of the restitution obligations due to the good conduct and reform of the defendant, absent compelling and extraordinary reasons, nor shall the court limit the ability of payees to enforce the obligations in the manner of judgments in civil actions." (Pen. Code, § 1203.3, subd. (b)(4).) However, it also provides that, "(5) Nothing in this section shall be construed to prohibit the court from modifying the dollar amount of a restitution order pursuant to subdivision (f) of Section 1202.4 at any time during the term of the probation." (Pen. Code, § 1203.3, subd. (b)(5).)

Penal Code section 1202.4, subdivision (f), the statute regulating direct victim restitution, provides in part: "Except as provided in subdivisions (q)

and (r), in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record. . . ."

In the instant case, the convicted offenses did not involve harm to a direct victim and, consequently, no order for direct victim restitution pursuant to Penal Code section 1202.4, subdivision (f), was entered. The cited provisions state that the trial court may forgo imposing a restitution fine for compelling and extraordinary reasons, and that it may modify the restitution orders and restitution fine also for compelling and extraordinary reasons, although the provisions also suggest that a defendant's reform and good conduct, in themselves, do not constitute such compelling and extraordinary reasons.

The transcript of the proceedings below shows that defendant, together with a number of other graduates of the drug court program, had successfully completed an intense 18-month course of treatment and rehabilitation. In defendant's case, she was pursuing a degree program full time and working part time, while being a homemaker for her two sons. She had remained clean and sober throughout the period of ROC treatment, and had become a leader of her peers in the program. She had qualified for early termination of her probation and discharge, including the right to have her conviction dismissed. The court characterized defendant's achievement as "tremendous," with similar remarks to the other graduates.

While these remarks do appear of record, and as such constitute a germ which the trial court might have chosen to articulate as "compelling and extraordinary" reasons to forgo the balance of the restitution fine in defendant's case, the articulation was incomplete and was not an express finding of such reasons to not impose or further enforce the restitution fine order. The order to suspend or dismiss defendant's restitution fines cannot be supported on this theory.

4. *The Terms of Defendant's Plea Bargain Required Suspension or Dismissal of the Unpaid Balance of the Restitution Fine*

Defendant here eventually entered into a plea bargain in the drug court with respect to her several charges. As a part of the plea bargain, she signed a contract for entry into the ROC program. One of the provisions of the

contract was: "I understand that upon successful completion my attorney can file a 1203.4 to allow me to withdraw my plea and enter a not-guilty plea. If the Court grants my attorney's motion, this will allow for a possible dismissal or reduction in the charges that brought me to this program."

As we noted *ante*, in the analysis of *People v. Field, supra*, 31 Cal.App.4th at page 1787, " 'A grant of relief under section 1203.4 is intended to reward an individual who successfully completes probation by mitigating some of the consequences of his conviction and, with a few exceptions, to restore him to his former status in society to the extent the Legislature has power to do so [citations].' [Citation.]" "The purpose and hope" of probation and treatment programs, such as the ROC program, "are, of course, that through this act of clemency, the probationer may become reinstated as a law-abiding member of society. Removal of the blemish of a criminal record is the reward held out through the provisions of Penal Code, section 1203.4, as an additional inducement. The obvious purpose is to secure law compliance through an attempt at helpful cooperation rather than by coercion or punishment." (*People v. Johnson, supra*, 134 Cal.App.2d at p. 143.) Likewise, relief from other penalties and disabilities, such as payment of fines and fees, may also be a "reward held out . . . as an additional inducement," with the "obvious purpose . . . to secure law compliance through . . . cooperation rather than by coercion or punishment." (*Ibid.*)

A negotiated plea agreement is a form of contract, which provides benefits to the respective parties and to the courts. (*People v. Shelton* (2006) 37 Cal.4th 759, 767 [37 Cal.Rptr.3d 354, 125 P.3d 290].) It is interpreted by contractual principles, and acceptance of the agreement binds the parties to the agreement. (*People v. Segura* (2008) 44 Cal.4th 921, 930 [80 Cal.Rptr.3d 715, 188 P.3d 649].)

"It is settled that 'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled.' [Citation.] The Supreme Court has recognized that due process requirements apply not only to the taking of the plea, but also to implementation of the bargain. [Citation.] 'It necessarily follows that violation of the bargain by an officer of the state raises a constitutional right to some remedy.' [Citation.] 'This does not mean that *any* deviation from the terms of the agreement is constitutionally impermissible.' [Citation.] Rather, the variance must be ' "significant" in the context of the plea bargain as a whole to violate the defendant's rights.' [Citations.]" (*People v. Arata, supra*, 151 Cal.App.4th at pp. 786–787.)

A provision of defendant's plea agreement here was the suspension, during the pendency of defendant's participation in the ROC treatment program, of

payment of the restitution fines, as well as the other fines and fees imposed by the judgment. (See fn. 6, *ante*.) The People did not object to this provision when incorporated into the probation plea agreement.

██ "Not all terms of a plea bargain have to be express; plea bargains may contain implied terms." (*People v. Arata, supra*, 151 Cal.App.4th at p. 787.) Here, the relief afforded to defendant from having to pay the restitution fines was express, but the reasoning underlying the court's fashioning of the terms of probation, and any promise for the future, were implicit in that express order to suspend the fees and fines.

██ Probation itself is an act of clemency (*People v. Benitez* (2005) 127 Cal.App.4th 1274, 1278 [26 Cal.Rptr.3d 262] ["[f]inding a defendant ineligible for probation is not a form of punishment, because probation itself is an act of clemency on the part of the trial court"]), and "its primary purpose is rehabilitative in nature [citation]" (*People v. Howard* (1997) 16 Cal.4th 1081, 1092 [68 Cal.Rptr.2d 870, 946 P.2d 828]). The proffer of relief under Penal Code section 1203.4 is also held out, as we have noted *ante*, as an additional reward or incentive to assist the probationer in again becoming "a law-abiding member of society. . . . The obvious purpose is to secure law compliance through an attempt at helpful cooperation rather than by coercion or punishment." (*People v. Johnson, supra*, 134 Cal.App.2d at p. 143.) As noted, the trial court at the time of the plea bargain undertook to suspend—in effect to modify—the terms of defendant's probation to relieve her of the obligation to pay the fines and fees imposed under the judgment, and the People did not object. The order suspending payment of the fines and fees was an additional and ongoing act of clemency, intended and designed to assist defendant in overcoming her circumstances: to become clean and sober, to learn to live independently and productively, to ready herself for the future through education, and to perform all the other requirements of her program. Defendant was able to succeed in significant part, even with her limited means, because of the relief from the additional financial burdens entailed by the payment of the fines and fees ordered in the judgment. The stay or suspension of those payments during the probationary period carried with it the implied promise that the relief would become permanent, should defendant in fact succeed in her recovery program.

That is, the additional burdens attendant upon requiring payment of the fines and fees during the probationary period posed a significant risk or stumbling block to defendant's success in the ROC program, such that relief from those burdens was deemed an important component of defendant's potential for success. There was no reason to believe that those burdens would not equally pose a significant risk or stumbling block to defendant's continued recovery after she graduated from the ROC program. It was

therefore a matter "within [defendant's] contemplation and knowledge" when she entered her plea (see *People v. Panizzon* (1996) 13 Cal.4th 68, 85 [51 Cal.Rptr.2d 851, 913 P.2d 1061]), that an additional incentive, inducement and reward for success would be the continued abeyance of the restitution requirement.

That implied promise formed a significant provision in the overall context of the plea bargain. The circumstances showed that defendant faced significant "financial challenges" during the probationary period, including providing a home for her two sons, while working part time and going to school full time. The order suspending payment of the restitution fines while she participated in drug treatment and recovery gave defendant essential relief during the program period. Defendant noted the difficult "balancing act" caused by the juxtaposition of family life, recovery treatment, work, and school.

■ The reasons that justified the court in suspending payment of the restitution fines during defendant's participation in the ROC program still remained after graduation. In addition, going forward, defendant would be without the tangible support of the program resources. Just as probation is itself a kind of inducement or incentive in the rehabilitative process, and just as relief under Penal Code section 1203.4 is held out as a reward and an inducement to obtain rehabilitation by cooperative rather than retributive means, so the relief from (or suspension of) the duty to pay the restitution fines was an inducement or encouragement to defendant to pursue her rehabilitative program in a cooperative spirit, without the burden of additional "financial challenges" or hardships.

Unlike the duty to register as a sex offender, the prohibition from possession of firearms, or other categories of disabilities and penalties that remain in force despite relief under Penal Code section 1203.4, there is no express prohibition against relief from restitution orders or restitution fines following the granting of a motion under Penal Code section 1203.4. Indeed, as we have discussed, such an argument is undermined by the dismissal of the convicted charge. Relief under Penal Code section 1203.4 restores a probationer, for most purposes, to his or her preconviction status in society; conviction is the basis for the restitution order in the first instance.

In sum, the suspension of the restitution and other fines and fees was a substantial factor contributing to defendant's success in completing her rehabilitation program. Implicitly, continued suspension or dismissal, or other disposition of the restitution fine and other fines and fees was an additional inducement, incentive and reward held out to defendant for successful completion. It formed a material part of her plea bargain and was enforceable

as such. Nothing in Penal Code section 1203.4 mandates the exclusion of restitution fines from the provision's general release from penalties and disabilities of the conviction. The trial court therefore was within its discretion, and indeed it was under a duty, to suspend, dismiss, or otherwise dispose of the unpaid portion of defendant's restitution fines. Such suspension or dismissal did not negate the general statutory authority of the California Victim Compensation and Government Claims Board to collect unpaid restitution fines in most cases.

## DISPOSITION

Defendant successfully completed her probation through early termination. This success was a circumstance that entitled her to move to dismiss the underlying convictions pursuant to Penal Code section 1203.4. Upon dismissal of the underlying convictions, the triggering event requiring the imposition of a restitution fine was removed for most purposes; the trial court therefore properly suspended or dismissed the restitution fines. In addition, relief from the payment of the restitution fines was a term of defendant's probation plea agreement, with the implied promise of continued relief from payment upon successful completion of probation.[7] For these reasons, the trial court's order suspending or dismissing the unpaid balance of defendant's restitution fines in her three cases was proper. The judgment is affirmed.

Ramirez, P. J., and Miller, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 10, 2013, S210531.

---

[7] A finding of compelling and extraordinary reasons to not impose a restitution fine would also justify an order suspending or dismissing unpaid restitution fines, although the trial court below made no such finding in this case.