Filed 4/17/14  P. v. Dunn CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>            v.<br><br>WILLARD A. DUNN,<br><br>        Defendant and Appellant. | F064800<br><br>(Super. Ct. No. VCF042784-99)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Tulare County.  Gerald F. Sevier, Judge.

Willard A. Dunn, in propria persona, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Peter A. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Willard Arthur Dunn was convicted by a jury of numerous felony counts arising from acts of sexual abuse against children.  In an earlier appeal, we affirmed the judgment with the exception of certain findings on special allegations that did not affect

his ultimate sentence.  (*People v. Dunn* (Dec. 9, 2002, F037048) [nonpub. opn.].)[1]

Appellant now appeals a subsequent order by the trial court requiring him to pay

$1.5 million in victim restitution for noneconomic losses to each of five victims pursuant

to Penal Code section 1202.4. subdivision (f)(3)(F).[2]

Dunn challenges the legality of the order on multiple grounds, primarily arguing

that the trial court abused its discretion by failing to use a rational method of calculation

for the victims' noneconomic losses.  We find the court erred by ordering noneconomic

restitution for one of the five victims, who was ineligible to receive such restitution as a

matter of law.  Consequently, the total obligation of victim restitution for noneconomic

losses must be reduced from $7.5 million to $6 million.  There are no other grounds for

reversal.  As modified, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2000, Dunn was convicted of 21 felony counts for various sex crimes

against five victims; Amanda T., Ashley Q., Candace M., Shelley K., and Wendy M.  The

offenses occurred over a period of approximately seven years when appellant was in his

mid-to-late 40's.  The ages of his victims ranged from 11 to 17 years old.  We discuss the

details of these crimes in other parts of the opinion.

On October 12, 2000, the trial court sentenced Dunn to a total term of 33 years and

4 months in prison.  A restitution fine in the amount of $10,000 was imposed pursuant to

section 1202.4, subdivision (b).  Although each victim provided personal impact

statements at the time of sentencing, the trial court apparently overlooked the direct

---

[1] Our discussions of the factual and procedural history of the case are drawn in part from the summary set forth in the prior opinion.  (See Cal. Rules of Court, rule 8.1115(b).)

[2] All further statutory references are to the Penal Code unless otherwise indicated.

2.

victim restitution requirement under section 1202.4, subdivisions (a) and (f). The issue was never addressed at the hearing.

Dunn's convictions and sentence were affirmed by this court in a nonpublished opinion filed on December 9, 2002. Eight years later, on February 28, 2011, the Tulare County District Attorney filed a motion in the trial court requesting an order of economic restitution for $2,530 in relation to expenditures for mental health services received by Dunn's victims and paid for by the California Victim Compensation and Government Claims Board (CVCB). An amended motion filed on October 6, 2011 recalculated the cost of the mental health services to be $3,872. In addition, the district attorney requested a determination of the amount of noneconomic harm suffered by each victim as a result of Dunn's crimes and an accompanying order for victim restitution pursuant to sections 1202.4, subd. (f)(3)(F) and 1202.46.

Evidence submitted in support of the district attorney's amended motion included a copy of the reporter's transcript from the October 2000 sentencing hearing, typed statements from Amanda T., Candace M., Shelley K., and Wendy M., and three letters from the therapist of Amanda, Candace, and Ashley Q. Dunn's legal counsel filed a written opposition contesting only the issue of economic restitution on grounds that the original restitution fine of $10,000 should be used to reimburse the state for the victims' therapy. The matter was heard before the trial court on February 22, 2012.

All five victims testified at the restitution hearing. Dunn's attorney submitted the matter on his written opposition without contesting the request for noneconomic restitution. The trial court granted the motion in full. Dunn was ordered to pay economic restitution in the amount of $3,872 to the CVCB and $1.5 million in noneconomic restitution to each of the five victims. This appeal followed.

3.

## DISCUSSION

**Procedural Issues**

Appellant's opening brief contains ten enumerated arguments. Five of these arguments challenge the district attorney's ability to seek victim restitution subsequent to the original sentencing decision and the trial court's ability to order restitution after failing to do so in the first instance. Respondent refutes these claims by citing to our opinion in *People v. Moreno* (2003) 108 Cal.App.4th 1 (*Moreno*), which holds that a trial court's failure to impose victim restitution, as required by section 1202.4, subdivision (a)(3)(B), is a sentencing error that can be corrected at any time pursuant to section 1202.46.[3] (*Moreno*, *supra*, 108 Cal.App.4th at pp. 7-12.) The trial court may issue a post-judgment restitution order once the error is brought to its attention, even if the court did not expressly reserve jurisdiction over the issue at the time of sentencing. (*Id*. at p. 10.) In his reply brief, Dunn concedes the correctness of respondent's analysis and withdraws his first five assertions of error. We accept the withdrawal of those contentions.

We also recognize the legitimacy of respondent's position that Dunn's remaining arguments should be considered forfeited because he failed to raise the necessary objections below. (*People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218.) However, Dunn has asserted a claim for ineffective assistance of counsel on grounds which encompass his attorney's failure to preserve certain issues for appellate review. We therefore address his arguments on the merits. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 428; *People v. Felix* (2008) 160 Cal.App.4th 849, 858.)

---

[3] This assumes the court did not previously make an express finding of "compelling and extraordinary reasons" for not ordering full restitution. (§§ 1202.4, subds. (f), (g); 1202.46.)

4.

**Victim Restitution for Economic Losses**

In California, persons found guilty of a crime are normally responsible for two types of restitution. (*People v. Giordano* (2007) 42 Cal.4th 644, 651 (*Giordano)*; *Vigilant Ins. Co. v. Chiu* (2009) 175 Cal.App.4th 438, 443 (*Chiu*).) First, absent "compelling and extraordinary reasons," all convicted defendants must pay a restitution fine pursuant to section 1202.4, subdivision (b) in an amount between $240 and $10,000, "set at the discretion of the court and commensurate with the seriousness of the offense." (§ 1202.4, subd. (b)(1).) Restitution fines are deposited into the Restitution Fund in the State Treasury, which exists to help compensate victims throughout the state who have experienced financial harm as a direct result of criminal acts. (§ 1202.4, subd. (e)); Gov. Code, § 13950, subd. (a).) "Second, when a defendant is convicted of a crime involving a victim who 'has suffered economic loss as a result of defendant's conduct[,]' the court must require the defendant to pay full restitution directly to the victim or victims of the crime…." (*Giordano*, *supra*, 42 Cal.4th at pp. 651-652, quoting § 1202.4, subd. (f)).)

Crime victims may apply to the Restitution Fund, which is administered by the CVCB, in lieu of attempting to recover their economic losses from the defendant. (*People v. Holman* (2013) 214 Cal.App.4th 1438, 1452 (*Holman)*.) Although fines are a major source of income for this program (*Chiu*, *supra*, 175 Cal.App.4th at p. 443, fn. 6), funding is also replenished through the enforcement of direct victim restitution orders. Restitution ordered pursuant to section 1202.4, subdivision (f) "shall be ordered to be deposited to the Restitution Fund to the extent that the victim, as defined in subdivision (k), has received assistance from the [CVCB]…." (§ 1202.4, subd. (f)(2); *Holman*, *supra*, 214 Cal.App.4th at p. 1452.)

When Dunn was sentenced in October 2000, the trial court imposed a restitution fine under section 1202.4, subdivision (b) in the amount of $10,000. In response to the District Attorney's subsequent request for victim restitution under section 1204, subdivision (f), Dunn's former attorney did not dispute that the CVCB was entitled to

5.

reimbursement in the amount of $3,872, but argued the sum "should be paid out from the balance of the $10,000 restitution fine." No authority was cited in support of this proposition.

Dunn, who is representing himself on appeal, does not provide a substantive discussion of this issue in his briefs. Consequently, any challenge to the imposition of victim restitution for economic losses has been forfeited. (*People v. Roscoe* (2008) 169 Cal.App.4th 829, 840; *People v. Baniqued* (2000) 85 Cal.App.4th 13, 29.) Forfeiture aside, defense counsel's argument was meritless. The requirement that a convicted criminal pay a restitution fine pursuant to section 1202.4, subdivision (b) is separate and distinct from the obligation to make direct victim restitution under subdivisions (a) and (f) of the statute. (*People v. Villalobos* (2012) 54 Cal.4th 177, 180-181.) There is no overlap between one penalty and the other. (*Id*. at p. 185.)

**Victim Restitution for Noneconomic Losses of Shelley K.**

Restitution orders are reviewed for abuse of discretion. (*Giordano*, *supra*, 42 Cal.4th at p. 663.) However, an order predicated upon "a demonstrable error of law" constitutes an abuse of discretion in and of itself. (*People v. Jennings* (2005) 128 Cal.App.4th 42, 49.) Dunn asserts, and respondent concedes, that the trial court committed such an error by ordering restitution for noneconomic losses suffered by Shelley K. Respondent's concession is appropriate.

"With one exception, restitution orders are limited to the victim's economic damages." (*People v. Smith* (2011) 198 Cal.App.4th 415, 431 (*Smith*.) The exception, as stated in section 1202.4, subdivision (f)(3)(F), is for "[n]oneconomic losses, including, but not limited to, psychological harm, for felony violations of Section 288." (*Smith, supra*, 198 Cal.App.4th 415, 431.) Section 288 criminalizes lewd and lascivious conduct with children under the age of 14 years. (§ 288, subd. (a).)

The noneconomic damages provision of section 1202.4 is expansively worded insofar as it refers to felony "violations" of section 288 rather than "convictions."

Therefore, section 1202.4, subdivision (f)(3)(F) arguably applies to crimes prosecuted under other sections of the Penal Code which also qualify as violations of section 288. (See § 288, subd. (a).) For example, acts of unlawful sexual intercourse (§ 261.5), sodomy (§ 286), oral copulation (§ 288a), and penetration by a foreign object (§ 289), if committed with the requisite mental state against a minor under the age of 14, will support a conviction under section 288. (*People v. Madera* (1991) 231 Cal.App.3d 845, 851.) At the boundaries of its age prerequisite, section 288 applies where "the victim is a child of 14 or 15 years, and [the perpetrator] is at least 10 years older than the child." (§ 288, subd. (c)(1).)

Dunn's convictions in relation to Shelley K. were limited to two counts under section 288a, subdivision (b)(1) for oral copulation with a person under the age of 18. However, Shelley was at least 17 years old at the time of the events which formed the basis for those convictions. By the statute's express terms, unlawful oral copulation cannot be prosecuted under section 288 if the victim was older than 15 years at the time of the offense. (§ 288, subds. (a), (c)(1); *People v. Anderson* (2008) 168 Cal.App.4th 135, 144.)

Even under the most liberal construction of section 1202.4, subdivision (f)(3)(F), Shelley was not eligible for restitution in the form of noneconomic damages because Dunn's crimes against her did not constitute violations of section 288. The trial court had no discretion to authorize such an award. Therefore, the order of restitution to Shelley K. for noneconomic losses of $1.5 million must be stricken from the judgment. Given the outcome under the forgoing analysis, we need not address Dunn's related claims of prosecutorial misconduct based on the district attorney's request for an unauthorized sentence as to Shelley K. and ineffective assistance of counsel based on his attorney's failure to object to that request.

**Victim Restitution for Noneconomic Losses of Amanda T., Ashley Q., Candace M. & Wendy M.**

Background

Amanda T. had recurring sexual encounters with Dunn from the ages of 14 to 16, including intercourse when she was 15 years old. Amanda estimated that she had orally copulated Dunn on approximately 30 different occasions. Accordingly, Dunn was convicted on five counts of lewd and lascivious acts upon the body of a minor 14 or 15 years old (§ 288, subd. (c)(1)), one count of unlawful sexual intercourse with a minor under the age of 16 (§ 261.5, subd. (d)), and one count of oral copulation with a person under the age of 18 (§ 288a, subd. (b)(1).

Amanda provided a victim impact statement at the October 2000 sentencing hearing, expressing emotions of anger, embarrassment, humiliation, regret, and sadness. She explained how Dunn's actions and the publicity surrounding the trial scarred her emotionally and damaged her relationships with family and friends. She also claimed to be receiving therapy to cope with those issues. At the restitution hearing in February 2012, Amanda described how the underlying events had continued to haunt her for more than a decade, resulting in nightmares, emotional problems, and relationship issues with her husband. Amanda's therapist submitted a letter to the court confirming these symptoms. The letter further indicated that Amanda suffered from post-traumatic stress disorder, low self-esteem, depression, general anxiety, and other long-term effects of sexual abuse and exploitation.

Ashley Q. was victimized by Dunn from the time she was in sixth grade until she entered high school. Her experience was similar to those of Amanda T. and Candace M. in that Dunn was a close friend of her parents and had used his position of trust to facilitate the crimes. Dunn's abuse of Ashley began with inappropriate touching and progressed to repeated instances of oral sex and eventually intercourse. He warned Ashley not to tell anyone about their encounters because it would cause people to hate

her, think she was a "slut," and make her parents ashamed of her. Ashley's trial testimony led to Dunn's conviction on one count of continuous sexual abuse of a child under the age of 14 (§ 288.5).

Ashley's statements at the original sentencing hearing were addressed to Dunn directly. She spoke of emotional and physical loss, and her resulting distrust of others. When she returned to court in 2012, Ashley described persistent feelings of alienation, anxiety, and flashbacks to the incidents of abuse. She claimed the impact of those events had continued to impair her personal and professional relationships into adulthood. A letter submitted by Ashley's therapist noted the molestation began at a very young age and was characterized by a physically aggressive form of sexual abuse which left Ashley feeling degraded and terrified, and led to current problems associated with post-traumatic stress syndrome.

Dunn began molesting Candace M. when she was 11 years old. In one of the earliest incidents, which occurred while she was in the sixth grade, Dunn touched Candace's breasts and inserted his penis into her vagina. Subsequent acts of sexual touching, oral copulation, and intercourse occurred over a period of several years and into her sophomore year of high school. In relation to Candace, Dunn was convicted on one count of continuous sexual abuse of a child under the age of 14 years (§ 288.5), four counts of lewd and lascivious acts upon the body of a minor 14 or 15 years old (§ 288, subd. (c)(1)), one count of unlawful sexual intercourse with a minor under the age of 16 years (§ 261.5, subd. (d)), and two counts of oral copulation with a person under the age of 18 years (§ 288a, subd. (b)(1)).

Candace expressed optimism when Dunn was sentenced in 2000. She told the court that despite her loss of innocence and immense pain, she looked forward to beginning a process of healing. Eleven years later, Candace lamented that the closure she had hoped for never came. By 2012 she had been diagnosed with post-traumatic stress disorder and was receiving professional treatment for a variety of psychological issues.

9.

Candace reportedly suffered from panic attacks, "weight issues," low self-esteem, and depression, all of which she attributed to Dunn's actions.

Dunn's final victim in the case was Wendy M., the younger sister of Shelley K. When Wendy was 15 years old Dunn fondled her breasts, inserted his fingers into her vagina, and made her touch his penis with her hand. For these acts, Dunn was convicted of lewd and lascivious conduct with a minor (§ 288, subd. (c)(1)) and unlawful sexual penetration (§ 289, subd. (i)).

Wendy submitted a prepared statement through a victim witness coordinator at the first sentencing hearing. The statement read, in part, "It only took one night for this man to change the rest of my life." She discussed the impact of the ordeal on her family and referred to emotional wounds "that feel as if they will never heal." Wendy said she kept Dunn's actions a secret for years and that her feelings of shame and embarrassment almost prevented her from testifying against him.

Wendy appeared in person at the 2012 hearing and testified in detail about the ways in which her life had been changed by Dunn's crimes. Regarding her initial reluctance to come forward as a victim, she stated, "I lived four and a half years keeping it a secret and going to drastic measures using drugs and alcohol to numb myself to the feelings and memories I had as a result of the molestation." Her emotional turmoil allegedly led to anorexia, bulimia, obsessive-compulsive disorder, and panic attacks, all of which she continued to struggle with at the time of her testimony. Wendy also attributed marital difficulties to the psychological harm caused by Dunn's behavior.

The trial court ordered restitution for noneconomic damages in the amount of $1.5 million for each of the four victims pursuant to section 1202.4, subdivision (f)(3)(F). Thus, the total amount imposed for noneconomic restitution as to Amanda, Ashley, Candace, and Wendy was $6 million. Dunn agrees with respondent that these four victims were entitled to noneconomic restitution based on his convictions under sections

10.

288 and 288.5. He argues, however, that the awards are excessive and constitute an abuse of discretion.

Analysis

The leading case on the subject of noneconomic restitution under section 1202.4 is *People v. Smith*, *supra*. In *Smith*, the Third District affirmed a trial court's order of noneconomic restitution in the amount of $750,000 against a defendant convicted under sections 288 and 288.5 for molesting a young girl from the time she was eight years old until she turned 15. (*Smith*, *supra*, 198 Cal.App.4th at pp. 419-420.) The extensive abuse involved repeated instances of unlawful digital penetration and, when the victim was 14, oral copulation. (*Id*. at pp. 420-421.)

As *Smith* explains, economic and noneconomic losses in the context of criminal restitution are no different from economic and noneconomic damages in civil litigation. (*Smith*, *supra*, 198 Cal.App.4th at p. 431.) Economic damages are "objectively verifiable monetary losses including medical expenses, loss of earnings, burial costs, loss of use of property, costs of repair or replacement, costs of obtaining substitute domestic services, loss of employment and loss of business or employment opportunities." (Civ. Code, § 1431.2, subd. (b)(1).) Noneconomic damages are "subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation." (Civ. Code, § 1431.2, subd. (b)(2).)

On an appeal from an order of restitution for economic loss, the reviewing court looks for a "'factual and rational basis for the amount of restitution ordered by the trial court.'" (*People v. Mearns* (2002) 97 Cal.App.4th 493, 499.) In those situations, the trial court must employ an objectively reasonable and discernable methodology rather than simply basing the award on its subjective beliefs regarding the appropriate amount of compensation. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1125.) "Unlike restitution for economic loss, however, loss for noneconomic [harm] is subjectively quantified."

11.

(*Smith*, *supra*, 198 Cal.App.4th at p. 431.) In light of the the fundamental differences between the two types of loss, *Smith* holds that a different standard of review must be applied to orders of noneconomic restitution to allow for the subjective considerations of the trial court judge. (*Ibid*.)

The standard of review adopted in *Smith* is based on the jury instruction used in civil cases for the determination of general damages, i.e., pain, suffering, and emotional distress. (*Smith*, *supra*, 198 Cal.App.4th at p. 436, quoting CACI No. 3905A (2009 ed.) ["No fixed standard exists for deciding the amount of these damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense."].) Under the *Smith* standard, the trial court is recognized as the trier of fact on the question of noneconomic loss. Its determination of the issue is entitled to deference, meaning all presumptions are indulged in favor thereof. (*Smith*, *supra*, 198 Cal.App.4th at p. 436.) An appellate court must "affirm a restitution order for noneconomic damages that does not, at first blush, shock the conscience or suggest passion, prejudice or corruption on the part of the trial court." (*Ibid*.)

Dunn seems to believe that *Smith* establishes $750,000 as the outer limit of recoverable damages by a single victim for noneconomic restitution. We do not share his interpretation of the case. To support its conclusion that the trial court's award did not "shock the conscience," *Smith* cited to *Ortega v. Pajaro Valley Unified School Dist*. (1998) 64 Cal.App.4th 1023, 1059-1061 (*Ortega*), which upheld a jury award of $1.5 million in noneconomic damages to a student who was molested by a school teacher. (*Smith*, *supra*, 198 Cal.App.4th at pp. 436-437.) The *Ortega* plaintiff was the victim of a single incident of molestation in which an older man touched her breasts when she was 12 years old. The child was ridiculed and ostracized for coming forward with her accusation. The teacher even sued her and her family for defamation. The victim's reputation was not vindicated until years later when the teacher was convicted of abusing another student. (*Ortega*, *supra*, 64 Cal.App.4th at pp. 1030, 1033, 1052, 1061.) If

12.

anything, we read *Smith* as implying that $1.5 million does *not* facially exceed the bounds of reason for an order of noneconomic restitution under section 1202.4.

Appellant's second argument is that the uniform award of $1.5 million to each of the four victims evidences the trial court's failure to "take into consideration the individual claims made by the victims [and] the nature of the Penal Code violations that [gave] rise to the alleged damage." Dunn finds it particularly objectionable that Wendy M. was deemed to have suffered the same level of harm as the other three victims when she was subjected to "only one" incident of sexual abuse. The problem with these arguments is their focus on the perpetrator's subjective evaluation of his actions rather than the victims' testimony regarding their years of pain and suffering. An award for noneconomic damages cannot be said to shock the conscience unless it is "so disproportionate to the injuries suffered" that it "virtually compels the conclusion the award is attributable to passion or prejudice." (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 614-615 (*Rufo*).)

The record indicates the trial court properly focused on the injuries suffered by each victim. The following excerpts from the 2012 sentencing hearing are compelling of this conclusion:

"I was the trial judge in this matter and I have some significant recollection of the evidence presented at the trial as to the horrific conduct of Mr. Dunn [and] his victimization of these five now young women[.] [F]rom time to time I recall that trial, and in so doing from time to time I recall the anguish that was evident, the suffering that was evident of the victims …[.] [N]ow, 11 years later, these same people have come back to this courtroom and have recounted in a very direct way how Mr. Dunn has affected their lives.

"I recognize that there are five separate victims, and each of these victims has been separately and irreparably harmed by Mr. Dunn. While each of their histories is, of course, different, there is a striking commonality as to each life. Each has attempted to

13.

heal themselves through therapy. Each has suffered incalculable and immeasurable psychological damage[.] [M]ost mentioned post-traumatic stress syndrome, some mention eating disorders, anxiety, paranoia. Their pain is so real it cannot be questioned. It is so true.

"I am asked to put a monetary amount on each one of these five situations, a monetary award to each person who has suffered so, as I said, immeasurably, as a result of the actions of Mr. Dunn. I wish that I could offer a way to give them peace in their lives and regrettably I recognize that … it will not happen. Whatever amount I order will not begin to give restitution for what they have suffered. It is my determination, after having considered each of the testimonies presented today, that as to each [victim] Mr. Dunn is ordered to pay noneconomic damages of 1.5 million dollars."

When determinations are to be made concerning noneconomic damages, the trier of fact is in the best position to assess the degree of harm suffered by the victim and assign a monetary amount as compensation. (*Peralta Community College Dist. v. Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 56-57; *Rufo*, *supra*, 86 Cal.App.4th at p. 615.) In the analogous civil context, the trier of fact is often a jury. "The appellate court usually defers to the jury's discretion in the absence of some other factor in the record, such as inflammatory evidence, misleading instructions or improper argument by counsel, that would suggest the jury relied upon improper considerations." (*Rufo*, *supra*, 86 Cal.App.4th at p. 615.)

Here, the trier of fact was the trial court, which had the unusual opportunity to evaluate the victims' pain and suffering at two distinct points in time over the span of more than a decade. More so than in ordinary sentencing situations, the trier of fact was able to consider non-speculative evidence of the long-term impact of the perpetrator's crimes. Under the *Smith* standard, the court's determination of noneconomic restitution is entitled to the utmost deference on appeal. Dunn fails to show the amount of restitution ordered for each victim was grossly disproportionate to their respective

14.

injuries so as to shock the conscience or compel the conclusion that the court was motivated by improper considerations.  We find no abuse of discretion.

**Sixth Amendment Confrontation Clause Argument**

Dunn contends the district attorney's failure to produce the therapist of Amanda, Ashley, and Candace at the time of sentencing violated his right to confront adverse witnesses as guaranteed by the Sixth Amendment to the United States Constitution.  We reject his claim.  "California courts have repeatedly held that the defendant does not have a Sixth Amendment right of confrontation at the sentencing stage of a criminal prosecution."  (*People v. Cain* (2000) 82 Cal.App.4th 81, 86 (*Cain*).)  Restitution hearings are part of the sentencing process.  (*Id*. at p. 87.)

Furthermore, "'sentencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes.'"  (*People v. Baumann* (1985) 176 Cal.App.3d 67, 81.)  A trial court may consider hearsay and unsworn statements in awarding restitution.  (*Cain*, *supra*, 82 Cal.App.4th at pp. 87-88.)  There was nothing improper about the prosecution's submission of letters from the victims' therapist without production of the witness in court.

We also note Dunn voluntarily waived his right to be present at the hearing.  Neither the trial court nor the district attorney did anything to prevent him from challenging the prosecution's evidence or subpoenaing the therapist to appear in person.  Any omissions to act by his defense attorney would relate to his claim for ineffective assistance of counsel, not his Sixth Amendment right of confrontation.

**Ineffective Assistance of Counsel**

The standard articulated in *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*) applies to allegations of deficient performance by a defense attorney at the time of sentencing.  (*People v. Jacobs* (2013) 220 Cal.App.4th 67, 77.)  To prevail on such a claim, the appellant must show the performance of his counsel fell below an objective standard of reasonableness, and prejudice occurred as a result.  (*Strickland*,

15.

*supra*, 466 U.S. at p. 687; *People v. Anderson* (2001) 25 Cal.4th 543, 569 (*Anderson*).) Dunn's ineffective assistance of counsel claim assigns fault to his defense attorney for (1) failing to cross-examine any of the victims or otherwise challenge their allegations of pain and suffering, (2) failing to subpoena the victims' therapist to appear at the sentencing hearing so that she could be cross-examined on her qualifications and diagnoses, and (3) failing to hire a defense expert to refute the district attorney's evidence concerning the victims' noneconomic losses.

"Even where deficient performance appears, the [judgment] must be upheld unless the defendant demonstrates prejudice, i.e., that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Anderson*, s*upra*, 25 Cal.4th at p. 569, citations and quotation marks omitted.) A reasonable probability of prejudice must be shown, meaning a probability sufficient to undermine confidence in the outcome. (*Ibid*.) Since Dunn's arguments fall short of satisfying the prejudice requirement, it is not necessary for us to address the adequacy of his attorney's performance. (*Strickland*, *supra*, 466 U.S. at p. 697 ["If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."]; accord, *People v. Boyette* (2002) 29 Cal.4th 381, 430-431.)

The trial court's assuredness in its ruling on noneconomic victim restitution is evident even from the cold transcript of the sentencing hearing. Dunn makes no showing whatsoever of a likelihood that a different outcome would have occurred but for his attorney's alleged errors and omissions. His argument that cross-examination of the victims and/or their therapist might have persuaded the trial judge to order a smaller monetary award for Amanda, Ashley, Candace or Wendy does not rise above the level of conjecture and speculation. The same is true of the notion that a retained defense expert would have been able to cast doubt over the nature and extent of the victims' psychological injuries. Dunn's claim fails as a result. (*People v. Medina* (1995) 11 Cal.4th 694, 773 ["On direct appeal, a claim of ineffective counsel cannot be

16.

established by mere speculation regarding the 'likely' testimony of potentially available witnesses."]; *People v. Williams* (1988) 44 Cal.3d 883, 933 ["A factual basis, not speculation, must be established before reversal of a judgment may be had on grounds of ineffective assistance of counsel."].)

<h1 style="text-align:center"><u>DISPOSITION</u></h1>

The trial court's order of restitution for noneconomic losses pursuant to section 1202.4, subdivision (f)(3)(F) is reversed only as to the award of $1.5 million to victim Shelley K. This portion of the sentence is stricken from the judgment. The judgment is affirmed in all other respects, including the order of economic restitution in the amount $3,872 payable to the California Victim Compensation and Government Claims Board and the order for noneconomic restitution of $6 million to be paid in the amounts of $1.5 million to Ashley Q., $1.5 million to Amanda T, $1.5 million to Candace M, and $1.5 million to Wendy M.

The trial court is directed to prepare an amended abstract of judgment to reflect the modification of victim restitution as described above. A copy of the amended abstract shall be forwarded to the Department of Corrections and Rehabilitation.

_____
Gomes, J.

WE CONCUR:

_____
Cornell, Acting P.J.

_____
Peña, J.

17.