Filed 9/29/14  P. v. Motley CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

| | |
|---|---|
| THE PEOPLE, | C075464 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF 13-2454) |
| v. | |
| LINDA APRIL MOTLEY, | |
| Defendant and Appellant. | |

Defendant Linda April Motley stole $61.16 worth of food and alcohol from a Safeway supermarket.  Following a bench trial, defendant was convicted of second degree burglary (Pen. Code, § 459)[1] and petty theft with a prior conviction (§§ 484, subd. (a), 490.5, 666, subd. (b)).  Defendant was also found to have been previously convicted of a "serious" felony within the meaning of section 667, subdivisions (c) and (e)(1) and to have served two prior prison terms within the meaning of section 667.5, subdivision (b).

---

[1]     Undesignated statutory references are to the Penal Code.

1

Prior to sentencing, defendant asked the trial court to strike her prior felony conviction pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). The trial court denied the motion.

On appeal, defendant contends the trial court abused its discretion in denying her *Romero* motion. Defendant also contends her restitution fine violates the constitutional prohibition against ex post facto laws. Finding no error, we affirm the judgment.

## BACKGROUND

Defendant went to the Safeway in West Sacramento on the evening of June 19, 2013. She took empty grocery bags from the checkout area and went to the deli counter where she ordered some chicken wings. Lisa Schwieger, a Safeway employee who was working at the deli counter that night, asked defendant if she wanted to pay for the chicken wings at the deli cash register. Defendant said no.

Schwieger notified the store's assistant manager, Katie McCann, that defendant was in the store and refusing to pay. McCann followed defendant around the store and watched her on the store's surveillance system.

Defendant spent the next several minutes browsing the refrigerated "walk-around case," the bakery aisle, and the liquor aisle. During this time, she was seen placing a bottle of liquor and several other items into her otherwise empty grocery bags.

A short time later, Schwieger saw defendant heading towards the exit. Schwieger again asked whether defendant wanted to pay for her items. Again, defendant said no. Defendant left the store without paying and started to walk down the street.

McCann called the police. West Sacramento Police Officer Christopher Rice encountered defendant a couple of blocks away from the store. She was carrying grocery bags and a purse. The grocery bags contained chicken wings, salami, a sandwich, a bag of chips, a slice of cake, a bottle of vodka, wine coolers, and beer. The purse contained approximately $2.

When Officer Rice asked whether defendant had a receipt for the items in the grocery bags, she replied that she did not. Instead, defendant said that a friend had purchased the groceries for her. During the trial, defendant testified that "two different gentlemen" offered to pay for her groceries. Other than defendant's testimony, there was no evidence that anyone accompanied defendant to the store or offered to pay for her groceries.

Defendant was detained in the back of Officer Rice's patrol car and identified by McCann a short time later. McCann returned the food and alcohol to the store and calculated their total value to be $61.16.

Defendant was charged with three counts as follows: (1) second degree burglary (§ 459 -- count 1); (2) petty theft with a prior conviction (§§ 484, subd. (a), 490.5, subd. (a), 666, subd. (a) -- count 2); and (3) petty theft with a prior conviction (§§ 484, subd. (a), 490.5, subd. (a), 666, subd. (b) -- count 3). The first amended information also alleged that defendant had previously suffered a prior serious felony conviction for attempted robbery (§§ 664/211) and had served two prior prison terms.

Defendant waived her right to a jury trial. The trial court found defendant guilty of second degree burglary and petty theft with a prior conviction, as charged in counts 1 and 3. With respect to count 2, the trial court found defendant guilty of the lesser included offense of misdemeanor petty theft.

The trial court found true the People's allegation that defendant had previously suffered a felony conviction for attempted robbery in 2012. The trial court also found true the People's allegations that defendant had served prior prison terms for driving with a measurable blood-alcohol content and causing injury in 2004 (Veh. Code, § 23153, subd. (b)) and for the attempted robbery conviction.[2]

---

[2]     Defendant notes she entered into a negotiated plea of no contest to the attempted robbery in exchange for a low term sentence of 16 months, resulting in a " 'paper

3

Prior to sentencing, defendant filed a "[s]entencing memorandum and statement in mitigation" emphasizing her history of mental health issues. Defendant asked the trial court to grant probation with a suspended prison term to give her an opportunity to complete a mental health treatment program. In the alternative, defendant asked the trial court to strike some or all of the People's enhancement allegations in the interests of justice.

At the sentencing hearing, defendant's counsel continued to emphasize defendant's history of mental illness, noting: "One of the things that the Court can consider in either granting or denying the *Romero* motion [is] the mental state of the defendant at the time that particular crime was committed. And when she committed that crime, I believe that she was under the influence of her illness, mental illness. And the facts in this case seem to support that she has not had any treatment, and she hasn't been on any sort of stabilized regimen of medication for her mental illness."

The People acknowledged defendant's struggle with mental illness, but countered that "she has a horrendous record that goes back to 1985," with "nine theft-related convictions." "Based upon the fact that she was on parole for a similar offense," the People argued, "but one where she took, or tried to take, the property by use of force or violence, and then committed a similar type offense here, I don't see how the Court would strike the strike given the recency of it."

The trial court denied defendant's *Romero* motion, explaining: "[Inasmuch] as the defendant is statutorily ineligible for probation, I would have to find first that this case warrants striking her 2012 prior serious felony conviction and ignoring the other three felony convictions to conclude that this is an unusual case. I can do neither in this situation. [¶] As [the prosecutor] pointed out, [defendant] has a criminal record that

_____

commitment' " (since her custody credits exceeded the term) and parole rather than prison.

4

began in 1985. She's been convicted of 29 offenses, many of them minor in nature, but those convictions were ongoing. There was never any significant period of time when the defendant was not involved in some aspect with the criminal justice system. [¶] With regard to the strike, the defendant was convicted of attempted robbery in, I think it was September of 2012, and the events in this case occurred in June of 2013. [¶] Given the recency of the defendant's prior conviction, given her entire record, there is nothing that suggests that this case or [defendant] herself would fall outside the spirit of the Three Strikes Law. So I would deny the request to strike [the attempted robbery conviction], and I would deny the request for a grant of probation."

The trial court noted, however, that "the information available to me supports the assertion that the defendant has suffered from some mental health condition for years." The trial court concluded that additional information regarding defendant's mental health condition would be helpful in deciding whether or not to strike one or more of the prior prison term enhancements. Accordingly, the trial court continued the sentencing hearing in order to consider psychological evaluations prepared in connection with defendant's conviction for attempted robbery.

The continued hearing focused on defendant's mental health condition. Following oral argument, which included a discussion of five recent mental health reports, the trial court concluded: "Based on what I have been able to learn, it is absolutely clear to me that there's no justification to place [defendant] on probation, but it is also clear to me that her behavior in this case and her overall contacts with the criminal justice system warrant some mitigation in the punishment to be imposed for the offenses for which she was convicted in this case." Accordingly, the trial court exercised its discretion to strike one of the prior prison term enhancements in the interests of justice.

Defendant was then sentenced to a lower term of 16 months, doubled for the attempted robbery conviction, plus 12 months for the remaining prior prison term enhancement, for an aggregate sentence of 44 months in state prison. The trial court also

5

ordered defendant to pay a $300 restitution fine, stating: "I must impose a restitution fine of $300." Defendant did not object to the amount of the restitution fine.

Defendant filed a timely notice of appeal.

## DISCUSSION

### I

### *Romero* Motion

On appeal, defendant contends the trial court abused its discretion by denying her motion to strike her prior strike conviction pursuant to *Romero*. She claims that the trial court "focused exclusively on her criminal history in making that determination," and failed to consider her mental condition, "which was the most significant factor, having contributed to both her present offenses as well as the 2012 strike offense." We disagree.

Section 1385 gives the trial court authority, on its own motion or upon application of the prosecution, "and in furtherance of justice," to order an action dismissed. (§ 1385, subd. (a).) In *Romero*, the California Supreme Court held that a trial court may use section 1385 to strike or vacate a prior strike for purposes of sentencing under the three strikes law, "subject, however, to strict compliance with the provisions of section 1385 and to review for abuse of discretion." (*Romero, supra,* 13 Cal.4th at p. 504.) Thus, a trial court's "failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).)

In ruling on a *Romero* motion, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

6

Dismissal of a strike is a departure from the sentencing norm.  Therefore, in reviewing a *Romero* decision, we will not reverse for abuse of discretion unless the defendant shows the decision was "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra,* 33 Cal.4th at p. 377.)  Reversal is justified where the trial court was unaware of its discretion to strike a prior strike or refused to do so for impermissible reasons.  (*Id.* at p. 378.)  But where the trial court, aware of its discretion, " 'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [Citation]." (*Ibid.*)

Defendant argues that the trial court "focused exclusively on her criminal history" and failed to consider her mental condition.  However, defendant discussed her mental condition at length in a six-page "[s]entencing memorandum and statement in mitigation," which the trial court received and reviewed prior to sentencing.  Defendant also discussed her mental condition at the sentencing hearing, noting that a mental health professional had concluded that "she was incapable of knowing or understanding the nature and quality of her act" at the time of the prior attempted robbery.  Indeed, defendant specifically urged the trial court to consider her mental condition in deciding whether or not to grant the *Romero* motion, arguing that she was "under the influence of her illness, mental illness" at the time of the prior offense.

There is nothing in the record to suggest that the trial court failed to consider defendant's mental health condition in denying the *Romero* motion.  To the contrary, the trial court acknowledged that "defendant has suffered from some mental health condition for years."  Indeed, the trial court continued the sentencing hearing in order to consider additional information regarding defendant's mental health condition. The trial court also relied on defendant's mental health condition to impose the lower term of 16 months for the current offense of burglary and struck one of her prior prison term enhancements pursuant to section 667.5, subdivision (b).  Thus, the trial court clearly considered

defendant's mental health condition. Nevertheless, the trial court concluded that defendant's mental health condition did not warrant sentencing outside of the Three Strikes law.

The trial court's decision was not an abuse of discretion. (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 993-994 [trial court's consideration of defendant's background and character demonstrates proper understanding of *Romero* discretion and court need not place greater weight on mental illness than on other relevant criteria].)

Defendant, age 58, has an extensive criminal record, spanning more than a quarter-century. She has 29 prior convictions, including four prior felony convictions. She committed the current offense while on parole for her prior strike conviction. Under the circumstances, and considering that defendant's prior strike conviction was less than a year old at the time of sentencing, we cannot say that the trial court's conclusion was arbitrary or irrational.

## II

## Restitution Fine

At sentencing, the trial court imposed a $300 restitution fine pursuant to section 1202.4, subdivision (b)(1) which provides in relevant part: "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record. [¶] (1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense. If the person is convicted of a felony, the fine shall not be less than . . . two hundred eighty dollars ($280) starting on January 1, 2013, and three hundred dollars ($300) starting on January 1, 2014, and not more than ten thousand dollars ($10,000)."

Defendant argues that the imposition of the $300 restitution fine was a violation of the constitutional prohibition against ex post facto penalties and must be reduced to $280

8

to reflect the statutory minimum in effect at the time of her offense.  We disagree, as defendant forfeited any claim of error, and fails to establish error in any event.

The ex post facto clauses of the state and federal Constitutions prohibit statutes which increase the punishment for a crime.  (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9; *People v. McKee* (2010) 47 Cal.4th 1172, 1193; *People v. Schoop* (2012) 212 Cal.App.4th 457, 475; *People v. Callejas* (2000) 85 Cal.App.4th 667, 670.)  "It is well established that the imposition of restitution fines constitutes punishment, and therefore is subject to the proscriptions of the ex post facto clause and other constitutional provisions."  (*People v. Souza* (2012) 54 Cal.4th 90, 143; *People v. Valenzuela* (2009) 172 Cal.App.4th 1246, 1248.)  Accordingly, the amount of a restitution fine is calculated as of the date of the offense.  (*People v. Souza*, at p. 143*; People v. Valenzuela*, at p. 1249.)

Even assuming arguendo the trial court intended to select the statutory minimum, defendant has forfeited any challenge to the amount of the restitution fine by failing to object below.  The rule of forfeiture applies to ex post facto claims, particularly where the alleged error could easily have been corrected had it been timely brought to the trial court's attention.  (See *People v. White* (1997) 55 Cal.App.4th 914, 917.)  "[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal."  (*People v. Scott* (1994) 9 Cal.4th 331, 356; see also *In re Sheena K.* (2007) 40 Cal.4th 875, 881 ["the forfeiture rule applies in the context of sentencing as in other areas of criminal law"]; *People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218 ["[a]n objection to the amount of restitution may be forfeited if not raised in the trial court"].)

Defendant tries to avoid the forfeiture rule by claiming that the fine constituted an unauthorized sentence.  Again, we disagree.  An unauthorized sentence may be corrected at any time, whether or not the defendant objected in the trial court.  (*People v. Valenzuela, supra,* 172 Cal.App.4th at p. 1249; *People v. Holman* (2013)

9

214 Cal.App.4th 1438, 1450-1451; *People v. Turrin* (2009) 176 Cal.App.4th 1200, 1205 (*Turrin*).) However, the unauthorized sentence exception constitutes a " ' "narrow exception" ' " to the forfeiture doctrine that applies only where the sentence " ' "could not lawfully be imposed under any circumstance in the particular case. " ' " (*Turrin,* at p. 1205; *People v. Anderson* (2010) 50 Cal.4th 19, 26.) Under the version of section 1202.4 in effect when defendant committed her crimes, the trial court had discretion to impose any amount greater than $280 and less than $10,000. Defendant's $300 fine clearly falls within the permissible range; therefore, the fine is not a sentence that " ' "could not lawfully be imposed under any circumstances . . . ." ' " (*Turrin,* at p. 1205.)

Furthermore, on the merits there was no error. Defendant committed the present crime on June 19, 2013. She was sentenced on December 11, 2013. The statutory minimum increased from $280 to $300 on January 1, 2014, almost three weeks after sentencing. (§ 1202.4, subd. (b)(1).)

Defendant's argument assumes that the trial court intended to impose the minimum fine, and mistakenly believed the minimum fine had already increased to $300. However, the trial court never expressed an intent to impose the minimum restitution fine. Instead, the trial court merely stated: "I must impose a restitution fine of $300." The trial court's succinct remarks could reflect a misunderstanding as to the current amount of the minimum restitution fine, as defendant contends; however, they could also reflect the trial court's correct understanding that section 1202.4, subdivision (b) requires the imposition of "a separate and additional restitution fine, unless [the trial court] finds compelling and extraordinary reasons for not doing so and states those reasons on the record." (§ 1202.4, subd. (b).) In any event, defendant has the burden of affirmatively showing error, and we cannot find such error on the basis of mere speculation about what the trial court intended, particularly when the trial court had discretion to impose a $300 fine. (*In re Julian R.* (2009) 47 Cal.4th 487, 499 [" ' "a trial court is presumed to have

10

been aware of and followed the applicable law" ' "]; *People v. Nitschmann* (2010) 182 Cal.App.4th 705, 708-709 [" ' "A judgment or order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters to which the record is silent, and error must be affirmatively shown. " ' "].)  Thus, on this record, we must presume that the trial court properly exercised its discretion to impose a $300 restitution fine pursuant to the version of section 1202.4 in effect at the time of defendant's offense.  (*People v. Nitschmann*, *supra,* 182 Cal.App.4th at pp. 708-709.) We therefore conclude there was no ex post facto violation.

## DISPOSITION

The judgment is affirmed.


    BLEASE        , Acting P. J.


We concur:


    ROBIE        , J.


    MAURO        , J.

11