Filed 11/2/20  P. v. Frazier CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B300037 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. VA128849 |
| v. | |
| JAHMAL LYDEL FRAZIER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Raul A. Sahagun, Judge.  Affirmed.

Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

# BACKGROUND

In 2013 the People filed an information charging defendant and appellant Jahmal Lydel Frazier with the murder of Roshan Bhandari on April 5, 2011. The People alleged special circumstances of (1) lying in wait (Pen. Code, § 190.2, subd. (a)(15))[1] and (2) that Bhandari was a witness to a crime and "was intentionally killed because of that fact." (§ 190.2, subd. (a)(10).) The People alleged Frazier personally and intentionally discharged a firearm causing Bhandari's death (§ 12022.53, subd. (d)), as well as other firearm enhancements. In August 2014, the prosecution announced it was seeking the death penalty in the case.

After years of pretrial proceedings, the case went to trial in February 2019. On April 16, 2019, the jury returned a verdict finding Frazier guilty of first degree murder. The jury also found the special circumstances and section 12022.53, subdivision (d) allegations true.

A day later—before the penalty phase began—counsel told the court that Frazier, through counsel, had "made an offer to settle this case regarding a waiver of all appellate issues in exchange for [the prosecution] taking death off the table." The prosecutor said the District Attorney herself had approved the disposition and the People were "going to accept that offer."

That afternoon, after some further discussion, the prosecutor explained to Frazier the terms of the plea agreement the parties had reached. At the outset, the prosecutor told Frazier, "If you have any questions and you need to talk to your counsel, please let me know. . . . If you have any questions of . . . your counsel and the court, please feel free to ask; okay?" Frazier responded, "Okay."

---

[1]     References to statutes are to the Penal Code.

2

The prosecutor asked, "Do you waive all legal, factual and procedural issues on appeal and habeas corpus petitions that would include appeals to the California appellate court, writ proceedings to any California appellate court, or any writ and appeals in the federal court system?" Frazier answered, "Yes." Frazier confirmed he had discussed the waivers of his rights with his counsel and any questions he had had been answered. The prosecutor asked Frazier, "Do you understand that you are receiving a substantial bargain from this agreement, meaning, we are taking death off the table and the court will sentence you to life without the possibility of parole?" Frazier answered, "Yes." The prosecutor continued to advise Frazier of the waivers at considerable length.

Frazier's counsel confirmed he had explained to Frazier "all of his statutory and constitutional rights" as well as his "appellate and habeas corpus rights," and he had answered all of Frazier's questions. The court found Frazier had waived his rights freely and voluntarily, with an understanding of the nature and consequences of the waivers. The court then accepted the parties' agreed-upon disposition and stated, "Very well, the death penalty is off the table and he will be sentenced to LWOP."

The parties returned to court on June 7, 2019 for sentencing. The court sentenced Frazier to life in prison without the possibility of parole. After discussing Frazier's presentence custody credits, the court ordered Frazier to pay a $300 mandatory minimum restitution fine and $70 in court assessments. The prosecutor told the court the People were requesting "$5,000 plus interest to the victim compensation board." Frazier's counsel objected, stating, "Obviously, Mr. Frazier is going to be spending the remainder of his life in custody, will have no access to income. Any efforts to obtain the limited monies he earns there will deter his participation

in normal prison activities. We believe restitution at this time in these circumstances is inappropriate and we'd request that the court deny the People's motion."

The prosecutor responded, "It's the People's position that he could earn money in prison and also he may inherit money. We don't know what will happen in the future, but the restitution order is something that he caused and he should be responsible for paying that."

The court stated it believed there was recent authority on a "defense . . . assert[ion] that he has no present ability to pay, that he is indigent." The court presumably was referring to the January 2019 court of appeal decision in *People v. Dueñas* (2019) 30 Cal.App.5th 1157. The court asked counsel if either had "any authority on that." The prosecutor said, "I thought that went to the restitution fine, not the restitution." The court said, "I think you're right. . . . I think that's correct." The court then ordered Frazier to pay restitution "in the amount of $5,000 plus ten percent interest from today."[2]

Frazier's counsel filed a notice of appeal. Counsel checked box 2.a.(1) on the Judicial Council form: "This appeal is based on the sentence or other matters occurring after the plea that do not affect the validity of the plea. (Cal. Rules of Court, rule 8.304(b).)" On September 6, 2019, our Administrative

---

[2]     At the June 7 hearing, the prosecutor apparently gave something in writing regarding restitution to the clerk, who told the judge, "I left a restitution request on the bench." The record on appeal does not include a copy of that submission, or of any proposed or signed order for victim restitution. The Abstract of Judgment under "[o]ther orders" states, "Restitution payable to California Victim Compensation Board ($5,000) + 10% interest from the sentencing date. See attached page." The attached page, however, seems to concern the firearm relinquishment.

4

Presiding Justice issued an order that this appeal is limited to issues that do not require a certificate of probable cause.

We appointed counsel to represent Frazier on appeal. Counsel filed an opening brief under *People v. Wende* (1979) 25 Cal.3d 436. Counsel stated Frazier "is appealing the sentencing after waiving all of his post-conviction rights in return for the prosecution agreeing not to seek the death penalty." In an accompanying declaration, counsel stated, "I have reviewed the entire record on appeal." Counsel declared he had written to Frazier, sent him a copy of the *Wende* brief, and "explained [his] evaluation of the record on appeal and [his] intention to file this pleading." Counsel informed Frazier he could file a supplemental brief. Counsel declared he had "previously sent [Frazier] the transcripts of the record on appeal."

On July 1, 2020, we also sent a notice to Frazier that his counsel had been unable to find any arguable issues and had filed a *Wende* brief. Our notice advised Frazier that he could file a supplemental brief or letter within 30 days, raising any contentions or argument he wished this court to consider. We have received no supplemental brief or letter from Frazier.

## DISCUSSION

The trial court sentenced Frazier to life without the possibility of parole in accordance with the parties' plea agreement. The only item to which Frazier, through counsel, objected, was the $5,000 in victim restitution to the California Victim Compensation Board. This restitution order appears to be the only item "occurring after the plea" to which the parties did not expressly agree.

Section 1202.4, subdivision (f) (1202.4(f)) provides "the court shall require" a defendant to make restitution to the victim "in every case in which a victim has suffered economic loss as a result of the defendant's conduct." (§ 1202.4, subd. (f).) In

5

enacting section 1202.4(f), our Legislature "implement[ed] the state constitutional mandate that 'all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer.'" (*People v. Evans* (2019) 39 Cal.App.5th 771, 777 (*Evans*), quoting Cal. Const., art. I, § 28, subd. (b)(13)(A).) As the *Evans* court noted, a restitution payment like this one—to the victims to make them "reasonably whole" economically—is "fundamentally different from the [restitution] fine and assessments in [*People v.*] *Dueñas* [(2019) 30 Cal.App.5th 1157]." (*Evans*, at pp. 776-777.)

"As *Dueñas* explains, the court facilities and court operations assessments are intended to maintain funding for California courts. [Citations.] A restitution fine is intended to be additional punishment for a crime." (*Evans*, *supra*, 39 Cal.App.5th at p. 777.) By contrast, "victim restitution is intended 'as a civil remedy rather than a criminal punishment.'" (*Id*. at p. 776.) Section 1202.4, subdivision (g) expressly states, "A defendant's inability to pay shall not be a consideration in determining the amount of a restitution order." (§ 1202.4, subd. (g); *Evans*, at p. 777 ["a defendant's ability to pay victim restitution is not a proper factor to consider in setting a restitution award under section 1202.4, subdivision (f)"].)

Nor does it matter that in this case, the victims have already received compensation through the California Victim Compensation Board. "As explained in [*People v.*] *Holman* [(2013) 214 Cal.App.4th 1438], '[t]he Restitution Fund is in the State Treasury Department, and is used to compensate victims for certain kinds of "pecuniary losses they suffer as a direct result of criminal acts." (Gov. Code, § 13950, subd. (a).) Crime victims may apply to the Restitution Fund as one avenue to recover monetary losses caused by criminal conduct.' (*Holman*, at

6

p. 1452, citing § 1202.4, subd. (f)(2).)  Then, 'when direct victim restitution has been satisfied by the victim's application to the victim compensation program, the amounts a defendant is ordered to pay as direct victim restitution are instead paid to the Restitution Fund.'  (*Holman*, at p. 1452.)"  (*Evans*, *supra*, 39 Cal.App.5th at p. 778.)

In short, the trial court did not err by ordering Frazier to reimburse the fund for the amount it had provided to the victims, presumably Bhandari's family.

We are satisfied that Frazier's counsel has fully complied with his responsibilities and that no arguable issues exist. (*People v. Kelly* (2006) 40 Cal.4th 106, 109-110; *Wende*, *supra*, 25 Cal.3d at pp. 441-442.)

## DISPOSITION

We affirm Jahmal Lydel Frazier's judgment of conviction, his sentence, and the trial court's restitution order.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.

We concur:



EDMON, P. J.



LAVIN, J.

7