Filed 12/10/25  P. v. Lugo CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B340190 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. XSCTA102418 |
| ANGEL ARTURO LUGO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tammy Chung Ryu, Judge.  Reversed and remanded with directions.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

## MEMORANDUM OPINION[1]

Angel Arturo Lugo appeals from his judgment of conviction after resentencing—specifically, from the trial court's conclusion that it did not have jurisdiction to revisit the restitution order imposed in 2005.  The parties agree the court erred, and the case must be remanded for the court to exercise its discretion to determine whether to modify the restitution order.

This is the fourth appeal in this case.  The relevant facts and procedural history appear in our previous opinions.  In a nutshell, in December 1999, Lugo repeatedly stabbed Christopher Davis with a knife, killing him.  Lugo's defense at trial was alibi: he and his fiancée testified they were asleep in bed when Davis was stabbed.  The jury convicted Lugo of first degree murder and found true the allegation that he'd personally used a deadly and dangerous weapon—a knife—in the murder.  (*People v. Lugo* (June 27, 2002, B152166) [nonpub. opn.] (*Lugo I*).)

The trial court granted Lugo's motion for a new trial, concluding it had erred in instructing the jury.  The People appealed and another panel of this court reversed the order, finding the instructional error was harmless.  (*Lugo I.*)

On remand, the trial court sentenced Lugo to 26 years to life in the state prison.  The court also ordered Lugo to pay $10,000 in direct victim restitution to Davis's family under Penal Code section 1202.4, subdivision (f).[2]  Lugo appealed and another panel of this court affirmed the conviction but reversed

---

[1]    We resolve this matter by memorandum opinion, consistent with California Standards of Judicial Administration, section 8.1. (*People v. Garcia* (2002) 97 Cal.App.4th 847.)

[2]    References to statutes are to the Penal Code.

the restitution award and remanded the case "to the trial court for a new hearing to determine the amount of victim restitution." (*People v. Lugo* (Sept. 30, 2004, B167693) [nonpub. opn.] (*Lugo II*).)  The court noted "[t]here was no evidence the victims —Davis's family—claimed a $10,000 loss."  (*Ibid.*)

On June 6, 2005, the trial court conducted a restitution hearing.  The court considered a declaration from Davis's sister Tonya Wilcher, records subpoenaed from the Lincoln Memorial Park Cemetery, and records from the Victim Compensation Board.  The court ordered Lugo to pay $973.50 to Davis's family and $3,981.31 to the Board.  The court also ordered Lugo to pay interest on both awards from the date of the judgment.

The court ordered an amended abstract of judgment.  The amended abstract, filed June 24, 2005, reflected (in paragraph 11) the two restitution awards.  However, in paragraph 9.b, a box was checked stating Lugo was to pay $10,000 in restitution to the victims.  This plainly was error.

In early 2021, the Secretary of the California Department of Corrections and Rehabilitation (CDCR) recommended the trial court recall Lugo's sentence under former section 1170, subdivision (d) (now section 1172.1), citing his record of good behavior in prison.  In June 2022, the Secretary rescinded her recommendation.  The trial court then ended the recall proceedings, concluding it lacked jurisdiction to recall Lugo's sentence once the Secretary rescinded her recommendation. (*People v. Lugo* (Dec. 21, 2023, B325491) [nonpub. opn.] (*Lugo III*).)

Lugo appealed.  We held "the court retained its sentencing jurisdiction and had discretion to act on the Secretary's recommendation—either by ruling on its merits or dismissing

3

the recall proceedings without prejudice." Accordingly, we remanded the case. (*Lugo III*.)

Back in the trial court, defense counsel filed a motion in support of resentencing. Counsel asked the court to reduce Lugo's conviction to second degree murder. Counsel attached a number of documents, including prison records and letters Lugo had written. Counsel also asked the court to "vacate" the restitution order of $3,981.31 to the Board. Counsel emphasized Lugo was not asking to vacate the restitution order to Davis's family, or the interest on that order. Counsel asked that CDCR and the Board "redesignate[ ] [the] restitution [Lugo had paid] to the Victim's family to satisfy the original order of restitution for $973.50 plus interest from the date of judgment."

The court conducted a hearing on July 25, 2024.[3] The court stated there was "basically an agreement between the defense and the prosecuting agency for resentencing." In accordance with that agreement, the court resentenced Lugo to second degree murder. As for victim restitution, however, the court stated it was "not sure if I can grant what is being requested such as redirecting money from [the] Victim Compensation Board as restitution directly to the family only."

Defense counsel told the court she believed the court had authority to "make . . . any changes to the restitution ordered in its entirety." Counsel stated Lugo had made "significant

---

[3] Lugo participated by telephone from Northern California. (The parole board apparently had paroled Lugo earlier that year.) Two members of Davis's family appeared in court. They expressed their profound unhappiness that Lugo had been paroled. The court explained that had been the parole board's decision, over which the court had no control.

4

payments" while in prison but the victim's family had "received zero dollars from any of the payments" that CDCR had "taken out of his prison account." Counsel provided the court with a "printout" that showed Lugo's "payments preinterest and then the balance post interest."[4] The prosecutor said she agreed with defense counsel that, once the sentence has been vacated, "the entire sentence becomes subject to review and is redone effectively as [if] it never happened."

The court stated it "should revisit the entire sentence," but it did "not think it reaches victim restitution." The court noted, however, that the funds Lugo had paid "should have been paid first to the victim's family, not to [the] Victim Compensation Board." The court added it was "up to [the CDCR] on how they determine how the money should be distributed," but it was "disturbing to [the court] that [CDCR] would first reimburse basically a government agency and not the family."

On appeal, Lugo contends the trial court was "mistaken in its belief that it did not have jurisdiction to revisit the original restitution order." The Attorney General agrees.[5] Accordingly,

---

[4] The record on appeal does not include that document.

[5] Lugo makes a second argument regarding the ex post facto clause. Lugo notes the language of section 1202.4, subdivision (f) was different in 1999 when Lugo committed the murder. Lugo contends that, before the Legislature amended the statute effective in 2017, "the court had discretion to order less than full restitution to any named victim." Although somewhat difficult to understand, Lugo seems to argue that the interest "on any unpaid compounded balance" will create a "life-time [*sic*] financial obligation" that amounts to "punishment" for ex facto clause purposes.

we reverse and remand the matter for the trial court to consider any contentions the parties may make regarding restitution to the Board. We express no views on how the court should rule.

## DISPOSITION

We vacate Angel Arturo Lugo's sentence and remand the matter for the court to conduct a new restitution hearing. The court is to send an amended abstract of judgment to the CDCR stating any restitution amounts. The court is to ensure that box 9.b is not checked on the abstract.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.

We concur:


EDMON, P. J.                          HANASONO, J.

---

Lugo cites *People v. Zito* (1992) 8 Cal.App.4th 736. *Zito*, however, concerned a Government Code provision that provided for direct victim restitution *in lieu of* all or part of a restitution *fine*. (*Id*. at pp. 740–741). As the Attorney General notes, while a fine constitutes criminal punishment, an order that a criminal defendant pay restitution directly to the victim does not. (See *People v. Holman* (2013) 214 Cal.App.4th 1438, 1451–1452 [purposes of direct victim restitution are "to reimburse the victim for economic losses caused by the defendant's criminal conduct," "rehabilitation of the defendant," and "deterrence of future criminality"].)